FLOYD WILES, Plaintiff-Appellant, v. MORITA IRON WORKS COMPANY, LTD., Defendant-Appellee.

First District (2nd Division) No. 86—0255

Opinion filed February 18, 1987.

Eugene I. Pavalon, Gary K. Laatsch, and Allen Tish, all of Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago, for appellant.

Patterson, Carl, Meuth, Basford & Fogle, of Libertyville, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Floyd Wiles, a resident of Cook County, Illinois, sued defendant Morita Iron Works Company, Ltd. (hereinafter Morita or MIW), a Japanese corporation, which designed and manufactured the machine which allegedly caused plaintiff's injuries. Plaintiff's employer, Astro Packaging Co. (hereinafter Astro), is a corporation which operates plants in Hawthorne, New Jersey, and Alsip, Illinois. Astro purchased four machines from defendant. Two were shipped to the New Jersey plant, and two were shipped to the Illinois plant. Plaintiff was employed by Astro's Alsip, Illinois, plant. One of the machines allegedly caused personal injuries to plaintiff, for which plaintiff seeks damages from defendant. The cause of action sounds in strict liability and negligence.

Defendant filed a special and limited appearance and a motion to dismiss, challenging the *in personam* jurisdiction of the court, pursuant to the Illinois long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209). The motion was supported by the affidavit of Motoo Morita, defendant's president. The trial court quashed the service of process on the defendant and dismissed defendant from this action "due to

lack of personal jurisdiction." Plaintiff appeals.

## I

■ We must determine whether sufficient minimal contacts existed between the defendant and the State of Illinois for Illinois courts to invoke *in personam* jurisdiction over the defendant pursuant to the Illinois long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209). An evidentiary hearing was not held on defendant's motion to dismiss. Therefore, our determination of minimal contracts must be made on the basis of plaintiff's complaint, defendant's motion to dismiss, and the supporting affidavit of defendant's president. (*Zeunert v. Quail Ridge Partnership* (1981), 102 Ill. App. 3d 603, 607, 430 N.E.2d 184.) We must accept all undenied, well-pleaded allegations of plaintiff's complaint as true and resolve all factual disputes in plaintiff's favor. *Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 895, 491 N.E.2d 39.

Plaintiff alleged that the defendant manufactured, designed, and sold the air cell former machine in question. On April 11, 1983, he was injured while cleaning the machine pursuant to his employment duties at Astro. In its motion to dismiss, defendant admitted that it manufactured the machine, that two machines were delivered to plaintiff's employer in Japan, and that the machines were taken to Illinois by Astro. The affidavit filed by Motoo Morita, defendant's president, revealed that four machines were sold to Astro and that he "is informed and believes that two (2) of the air cell formers were transported by Astro to Alsip, Illinois." The affidavit disclosed that the negotiations for the purchase of four air cell formers between plaintiff's employer and defendant took place at the following locations and times:

| September 22-23, 1980 | Monchengladbach, West Germany |
| November 17-19, 1980 | Hawthorne, New Jersey |
| July 21-23, 1981 | Defendant's plant, Japan |
| September 24, 1981 | Hawthorne, New Jersey |
| January 25-27, 1982 | Defendant's plant, Japan |
| April 27-May 1, 1982 | Defendant's plant, Japan |
| October 17-20, 1983 | Defendant's plant, Japan |

Further, counsel for defendant admitted before the trial court that two of the air cell formers were shipped from Japan directly to Alsip, Illinois.

Defendant's theory is that the machines were designed and manufactured in Japan and sold to Astro in Japan. The fact that two of the four machines were shipped by Astro "to Illinois from Japan was en-

tirely fortuitous." We must determine whether the record supports this conclusion.

Plaintiff was not a part to the transaction between his employer and defendant which resulted in the purchase and delivery of the machine that caused his injury. Motoo Morita, defendant's president, stated in his affidavit:

"The four (4) machines purchased by Astro Packaging Co. were manufactured by MIW at our plant in Japan. MIW delivered all air cell formers into the custody of agents of Astro Packaging Co. while the machines were in Japan. Astro Packaging Co. and its agents transported the machines from Japan. MIW is informed and believes that two (2) of the air cell formers were transported by Astro Packaging Co. to Alsip, Illinois."

Conspicuously absent from the affidavit are any references to contracts, shipping documents, delivery receipts, and other data which would support the conclusion that the sale and delivery of the machines was consummated in Japan. The carefully drawn affidavit does not state any facts to support the conclusion that during the two or three years of negotiations with Astro, defendant did not know that Astro had a plant in Illinois or that the machines were sold to Astro for use at a plant other than in Illinois or that the machines were sold to Astro for use at a plant in Illinois. No reference is made regarding service, warranty, or replacement parts that would normally be a part of such transactions and could shed light on contacts or contemplated contacts with any of the sovereign States of the United States.

The affidavit also states that defendant "does not own or operate any manufacturing plant or other business in Illinois"; that "MIW has not in the past employed any business or other agents in Illinois nor maintained any office in the State"; and that "[a]ll witnesses to the design process, manufacturing decisions, and assembly process are in Japan."

Considering the well-pleaded facts of plaintiff's complaint and resolving all factual disputes in favor of plaintiff, we can conclude that defendant knew that Astro had a plant in Illinois and that two of the machines purchased by Astro were intended for use in its plant in Alsip, Illinois.

## II

To sustain the exercise of long arm jurisdiction, under sections 2—209(a)(1) and (a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—209(a)(1), (a)(2)), plaintiffs must show: (1) that defendant transacted business in Illinois or committed a tortious

act within Illinois; (2) that the cause of action arose from the acts enumerated; and (3) that personal jurisdiction was consistent with due process. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.) Plaintiff has the burden of proving a valid basis for the assertion of jurisdiction over the defendant. In order to meet this burden, it is only necessary that there be a *prima facie* showing that jurisdiction exists. (*Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360-61, 453 N.E.2d 828, *appeal denied* (1984), 99 Ill. 2d 527.) In determining whether there has been such a showing, we must accept all undenied, well-pleaded allegations in plaintiff's complaint as true and resolve all factual disputes in plaintiff's favor. *Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 895, 491 N.E.2d 39.

## A

It is undisputed that defendant, a Japanese corporation, has no office or agent in Illinois and does not own any real estate in Illinois. Defendant sold its machine directly to Astro in Japan without utilizing any middlemen such as agents or distributors. Under such circumstances, we must determine if it is possible for defendant to be engaged in "[t]he transaction of any business within this State." Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(1).

■ The influx of foreign products to our shores and the dominance of some of our major markets by foreign enterprises against their American competitors has become a matter of national concern. (State of the Union Address by President Reagan (January 27, 1987).) The defendant cannot insulate itself from jurisdiction of the Illinois courts by making the sale and delivery of the machines to Astro in Japan. Although it did not directly transact business in Illinois with its physical presence, the defendant did transact business in Illinois "as a matter of commercial actuality." (*Buckeye Boiler Co. v. Superior Court* (1969), 71 Cal. 2d 893, 902, 458 P.2d 57, 64, 80 Cal. Rptr. 113, 120.) In *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, the Illinois Supreme Court stated:

> "With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from [their] laws is an indirect one, however, does not make [those laws] any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in

his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with [such states] to justify a requirement that he defend [there]." (22 Ill. 2d 432, 442, 176 N.E.2d 761.)

Commenting favorably on *Gray*, the California Supreme Court said:

"A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability to jurisdiction necessarily differ, depending upon whether it deals directly or indirectly with residents of the state." *Buckeye Boiler Co. v. Superior Court* (1969), 71 Cal. 2d 893, 902, 458 P.2d 57, 64, 80 Cal. Rptr. 113, 120.

The circumstances of defendant's sale of two of the machines to Astro were such that it knew or should reasonably anticipate that the machines would be used at Astro's plant in Alsip, Illinois. Defendant's conscious and persistent efforts over more than two years of meetings with Astro in the United States, West Germany, and Japan indicate that the ultimate use of defendant's machine at Astro's plant in Illinois was not fortuitous or unanticipated. The sale to Astro generated gross income for defendant. "A manufacturer engages in economic activity within a state as a matter of 'commercial actuality' whenever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result." 71 Cal. 2d 893, 902, 458 P.2d 57, 64, 80 Cal. Reptr. 113, 120.

The trial court relied on *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559, in finding for the defendant. In that case, the plaintiffs, New York residents, purchased an automobile from a New York retailer through a New York distributor. The plaintiffs were en route to their new home in California when they were involved in an automobile accident in Oklahoma. The plaintiffs sued the retailer and the distributor in Oklahoma alleging that the automobile's defective design proximately caused their injuries. The court held that Oklahoma could not exercise jurisdiction over the New York defendants because there were no minimum contacts between the defendants and the forum State. The New York defendants never directly or indirectly attempted to reach the Oklahoma market because their franchise covered three States in the New York region. They did not design or manufacture the automobile. The only contact the defendants had with the forum State was the fortuitous circumstance that a single automobile, sold by defendants in New York to New York residents, happened to be involved in an

accident while passing through Oklahoma. The factual distinction with the case at bar is obvious.

Not only did the trial court fail to note the factual distinctions of the instant case as compared to *World-Wide Volkswagen Corp.*, but it also failed to correctly apply the law. The trial court erroneously based its decision solely on the defendant's physical contacts with Illinois. Other courts have been confronted with jurisdictional questions similar to the case at bar and, while the nonresident defendant's contacts with the forum State are of importance, other significant factors enter into the jurisdictional analysis.

In *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.* (9th Cir. 1980), 633 F.2d 155, a Canadian distributor of fertilizer (Pillsbury) was found liable on two third-party actions for shipping the wrong fertilizer to the Montana plaintiff. Pillsbury premised its appeal, in part, on Montana's lack of jurisdiction over it.

The court of appeals affirmed the district court's holding that it had jurisdiction over Pillsbury. Pillsbury argued that the fertilizer just happened to travel to Montana, just as the car in *World-Wide Volkswagen Corp.* traveled to Oklahoma. But the court observed that Pillsbury had the ability to control its contacts with the forum and that it derived benefits from the contact. Pillsbury knew from the bill of lading that the fertilizer was headed towards Montana. Pillsbury also voluntarily entered into a contract that resulted in its product going to Montana. If Pillsbury found Montana's long arm jurisdiction unacceptable, it could have done business elsewhere. *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.* (9th Cir. 1980), 633 F.2d 155, 159.

The defendant, Morita, like Pillsbury, voluntarily entered into a contract that resulted in its product going to the forum State.

The leading case in Illinois dealing with the transaction of business in this State (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(1)) is *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155, *cert. denied and appeal dismissed* (1980), 444 U.S. 1060, 62 L. Ed. 2d 738, 100 S. Ct. 992. In *Connelly*, the plaintiff sued a Belgian tire-making company for personal injuries sustained when a tire manufactured by defendant failed while the plaintiff was driving his Opel automobile in Colorado. Plaintiff's father purchased the car in Illinois. Defendant argued that jurisdiction could not be exercised over it in Illinois because its principal place of business was Belgium, it had no agents or employees in Illinois, it never shipped or sold any products to Illinois, and it never advertised in Illinois. Accordingly, defendant urged that under both the United States Constitution and applicable Illinois law,

Illinois courts had no jurisdiction over it. Our supreme court rejected this argument. It held that since the Belgian tire maker introduced the tires into the stream of commerce and the tires came into Illinois on a regular basis as a part of the Opel car, the defendant transacted business in Illinois. It was reasonable to require the Belgian corporation to defend in Illinois, and the State's jurisdiction does not offend traditional notions of fair play and substantial justice.

In the instant case, the factors favoring the court's assertion of jurisdiction over Morita are substantially the same as the factors that were present in *Connelly*. Defendant contends that *Connelly* is distinguishable from the case before us because in *Connelly*, from 600 to 1,320 Opel cars per year, equipped with the Belgian manufacturer's tires, came to Illinois through channels of interstate commerce. It involved the regular and systematic sale of its products in Illinois through the stream of commerce. However, the case at bar was not a volume sales transaction. It involved the sale of four machines to an American corporation which shipped two of the machines to Illinois. Because of these distinguishing facts, defendant argues that the principles of law declared in *Connelly* cannot be applied. We disagree. Unlike tires, custom-made air cell former machines for use in a manufacturing operation are not volume sales items. A single business transaction with consequences in Illinois is sufficient to assert jurisdiction over the foreign defendant. (See *Johnson v. United Presbyterian Church in the United States of America, Inc.* (1981), 103 Ill. App. 3d 869, 431 N.E.2d 1275.) In the instant case, defendant transacted business in Illinois because it sold its products to a corporation that used the products in Illinois, the transaction was a money-making event for defendant, and plaintiff's injury was a direct result of the transaction. If defendant's sale of air cell formers to Astro did not constitute transacting business under the Illinois long arm statute, then Illinois courts would be powerless to assert jurisdiction over foreign manufacturers of defective products which are not a high volume variety. The State of Illinois has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-State actors. *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 223, 2 L. Ed. 2d 223, 226, 78 S. Ct. 199, 201.

■ The case for asserting personal jurisdiction over Morita is also evident because there were no middlemen involved in the transaction. Morita made a conscious effort to sell its product to a limited, but *known*, American market. Because Morita sold directly to the ultimate user of the product, Astro, it could reasonably anticipate Astro utilizing two of its machines at the Astro plant in Alsip, Illinois. As

the court noted in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 442, 176 N.E.2d 761, "if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." Therefore, under section 2—209(a)(1), Morita transacted business in Illinois.

B

Another basis for the exercise of *in personam* jurisdiction over a nonresident defendant is "[t]he commission of a tortious act within this State." (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(2).) Plaintiff was injured in Illinois while operating an allegedly defective machine manufactured by defendant in Japan.

■ Our supreme court has held that the alleged negligence in manufacturing a product could not be separated from the resulting injury. "To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase." (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 436, 176 N.E.2d 761.) The court concluded that defendant manufacturer committed a tortious act in Illinois, even though it never had an agent or employee in Illinois.

Defendant argues that *Gray* is distinguishable because the foreign manufacturer in *Gray* injected a large quantity of its products into the stream of commerce. We have already rejected this argument.

■ The defendant consciously placed its product into the stream of commerce which led into Illinois and from which it derived economic benefit. Assumption of jurisdiction by the Illinois courts does not offend traditional notions of due process.

C

Defendant makes a major point of the fact that the machines it manufactured in Japan were sold to an American corporation in Japan. It would like to end its responsibility at this point. However, the record does not show that the machines were purchased by Astro in Japan for use by Astro in Japan. On the contrary, there is no allegation of fact to show that Astro even had a plant in Japan in which it could utilize the machines. It was obvious the machines were intended for use in Illinois and New Jersey.

The record does not express any sovereign interest of the nation of Japan or any political or foreign policy considerations which would cause Japan to take precedence over the sovereign interest of this State. Illinois has a "manifest interest" in providing its residents, as

plaintiff is here, with a convenient forum for redressing injuries allegedly inflicted by out-of-State actors. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.

Defendant does not concede that plaintiff could obtain *in personam* jurisdiction over it in the State of New Jersey. At oral argument, defendant acknowledged that if plaintiff's action does not lie in Illinois, the filing of a new action in New Jersey would be subject to the additional defense of the statute of limitations. Thus, if the plaintiff is left with any remedy, he must pursue it in Japan.

Placing our approval on defendant's theory would be unjust to plaintiff and to defendant's American competitors. If a manufacturer in a foreign country wants to avoid products liability, it can cause the American purchaser to consummate the transaction and take delivery in the foreign country. Without concern for such liability and the financial burden of insurance premiums or self-insured reserves, the foreign manufacturer could possibly gain an additional economic advantage over its American competitors. The due process clause of the United States Constitution does not require us to inflict such potential harm upon the injured plaintiff or American industry.

Our application of the Illinois long arm statute to the facts of this case is consistent with due process and does not offend traditional concepts of fair play. Overseas manufacturers are encouraged to compete on the same terms as their American counterparts.

The issue in this case is not *forum non conveniens* but *in personam* jurisdiction. We conclude that defendant is properly subject to *in personam* jurisdiction in Illinois. If defendant believes that there is a more convenient forum, it is not precluded from seeking the removal of this action to the more convenient forum.

For the foregoing reasons, the order of the circuit court of Cook County quashing the service of process and dismissing defendant from this action is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SCARIANO, P.J., and STAMOS, J., concur.