**HERITAGE HOUSE RESTAURANTS, INC., Heritage House Smorgasbord of Oklahoma City, and Heritage House of Indianapolis, Plaintiffs–Appellants,**

v.

**CONTINENTAL FUNDING GROUP, INC., Defendant–Appellee.**

No. 88–2716.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 31, 1990.*

Decided July 2, 1990.

---

* After appellee failed to file a brief or respond to our order to show cause why the case should not be submitted without an appellee's brief, we ordered that the case be submitted without a brief or oral argument by appellee. *See* Circuit Rule 31. We also granted appellants' motion for expedited appeal and waiver of oral argument. This case is thus submitted on appellants' brief and the record below.

Tom Schanzle–Haskins, Bridget E. Madigan, Giffin, Winning, Cohen & Bodewes, Springfield, Ill., for plaintiffs-appellants.

David Niebauer, Gold & Wachtel, New York City, James Craven, Springfield, Ill., for defendant-appellee.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiffs-appellants Heritage House Restaurants, Heritage House Smorgasbord of Oklahoma City, and Heritage House of Indianapolis (hereafter collectively "Heritage House") appeal from the district court's dismissal of their second amended complaint for lack of personal jurisdiction over defendant-appellee Continental Funding Group, Inc. (Continental). For the reasons stated below, we reverse.

## I

## BACKGROUND

Heritage House's second amended complaint and the three affidavits it submitted to the district court established the following facts relevant to the issue of jurisdiction: Appellants are two limited partnerships and a corporation which is a general partner in both limited partnerships. The corporation and both partnerships were established under the laws of Illinois and have their principal place of business in Illinois. Heritage House's complaint states four counts against Continental: negligent misrepresentation, breach of contract, agency liability, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Heritage House Restaurants, Inc. (the corporation) invests money for the two limited partnerships. In May, 1984, the comptroller of the corporation, Joseph Kula, received a letter, at Heritage House's office in Springfield, Illinois, from Continental,[1] offering to assist Heritage House in finding high yield rates for their funds and depositing their monies in such accounts. According to the letter, when a company has available funds for deposit, it telephones Continental (at a toll-free number) to receive the latest rates, and Continental gives the company the name of a bank and instructions for wiring the money to that bank. Kula answered the letter with a request for references. Continental soon after mailed these references to Kula in Illinois. Continental listed four Illinois organizations as references, and, upon calling these entities, Kula learned that they all used Continental for investment advice. For a little over a year from that time, Kula used the services of Continental to receive information on interest rates. Kula then left his employment with Heritage House.

Soon after Kula left Heritage House, Continental contacted the senior accountant of Heritage House Restaurants, Inc., Valerie Ausmus,[2] to inquire whether Heritage House wanted to renew two certificates of deposit (one for each of the limited partnerships) that were on deposit at Guaranty Savings & Loan in Arkansas. Ausmus had not contacted Continental prior to this occasion. During this conversation, Ausmus told Continental that, rather than renewing the deposits at their current amounts of $100,000, Heritage House could only renew them at $75,000 each. Continental informed her that it did not handle deposits of less than $100,000, but that Heritage House could combine the certificates into one $150,000 deposit. After discussing the transaction with her superiors, Ausmus called Continental to inquire whether a $150,000 deposit would be insured, and was informed that payment would be guaranteed because the Savings & Loan collateralized any deposit over $100,000 with its securities. Continental also stated that it had other clients with deposits larger than $100,000 at that bank

---

1. Continental was acting at all relevant times through its agent and assistant vice-president, Sherri Gilmore.

2. This, and all of the conversations between Ausmus and Continental, took place while Ausmus was in Illinois.

and that it used that bank for that reason. After again speaking with her superiors, Ausmus informed Continental that Heritage House wished to withdraw the funds because of its uncertainty regarding the investment, but Continental again assured her that there would be no problem. Continental informed Ausmus that it would send a confirmation in the mail. Ausmus did not deal directly with the Savings & Loan; Continental handled the transaction.

Approximately one month later, the Savings & Loan was declared insolvent and placed in receivership for liquidation by the Federal Savings and Loan Insurance Corporation (FSLIC). Ausmus called Continental to inquire into the matter and was told there would be no problems with repayment. When Heritage House was reimbursed for its deposit, it received only $100,000, which was the amount insured by the FSLIC. The remaining $50,719.18 balance is the subject of this action.

## II

## ANALYSIS

■ In diversity cases, federal district courts have personal jurisdiction over parties when a court of the state in which the district court sits has personal jurisdiction. *See Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir.1984). Nonresident corporations are subject to the jurisdiction of Illinois courts if they fall under one of the provisions of the Illinois long-arm statute. *Deluxe Ice Cream Co.*, 726 F.2d at 1212.[3]

The relevant provisions of the Illinois long-arm statute state:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

\* · \* \* \* \* \*

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section.

Ill.Rev.Stat. ch. 110, ¶ 2–209(a, c).[4] Each cause of action alleged must independently arise from one of the enumerated acts. *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 345 (N.D.Ill.1984) (citing *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill. App.3d 789, 23 Ill.Dec. 352, 361, 383 N.E.2d 1379, 1387 (Ill.App.Ct.1978)). Once a court has determined that jurisdiction exists under the long-arm statute, it must also ensure that constitutional due process requirements would not be violated by exercising jurisdiction over the nonresident defendant. *Id.* at 348.

A. Illinois Long–Arm Statute

1. § 2–209(a)(1): transacting business in Illinois

■ The district court held[5] that the initial mailing Continental sent to Heritage

---

3. Because we hold that there was personal jurisdiction under the Illinois long-arm statute, we need not decide whether Continental is continuously and systematically "doing business" in Illinois. *See Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1216 (7th Cir.1984). However, the arguments Heritage House presents in its brief on this issue are relevant to our discussion below concerning whether the district court's exercise of jurisdiction under the long-arm statute over Continental would violate due process.

4. Section (c) as it existed on September 15, 1987, when Heritage House filed its Complaint, read as provided in the text above. Effective November 23, 1987, a new section (c) was added to § 2–209, and the above quoted section (c) became section (d).

5. The district court adopted the magistrate's recommendation of dismissal, and the reasoning referred to in this opinion is taken from that recommendation order.

House in Illinois and the various telephone conversations with Heritage House employees in Illinois were not sufficient to constitute the transaction of business in Illinois under the statute. We respectfully disagree.

■ To be subject to § 2-209(a)(1), the nonresident defendant must have transacted business which gives rise to the cause of action alleged by plaintiff. *See* Ill.Rev. Stat. ch. 110, ¶ 2-209(c); *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 401 (7th Cir.1987); *Deluxe Ice Cream Co.*, 726 F.2d at 1214; *Arthur Young & Co., et al. v. Bremer*, 197 Ill.App.3d 30, 143 Ill. Dec. 736, 740, 554 N.E.2d 671, 675 (1990). First, we conclude that Heritage House sufficiently alleged that Continental transacted business in Illinois.

A defendant transacts business in Illinois when substantial performance of contractual duties is to be rendered in Illinois or when a defendant invokes the benefits and protections of Illinois law in the contractual relationship. When a contract which is the basis of plaintiff's claim was entered into in Illinois, the defendant's Illinois activities can suffice to sustain jurisdiction. Nonetheless, the determination of whether a defendant sufficiently transacted business in Illi-

nois requires consideration of several factors including, who initiated the transaction; where the contract was entered into; and where the performance of the contract was to take place.

*Arthur Young & Co.*, 143 Ill.Dec. at 741, 554 N.E.2d at 676 (citations omitted). Heritage House claims that it had an oral contract with Continental under which Continental would, and did, provide information on investments to Heritage House in Illinois. This contract was initiated by Continental both originally and at the time of the renewal of the two certificates of deposit. The district court apparently characterized the relations between Heritage House and Continental as a single transaction, and believed such activity was not enough to establish jurisdiction.[6] However, we believe that the relationship between Heritage House and Continental set forth in the complaint was a continuing one. It began when Continental sent a letter to Heritage House in Illinois soliciting its business, and followed up that solicitation by sending a list of references to the same location. "Since defendant offered its services in Illinois to Illinois residents, it is unlikely the contract was entered into everywhere (sic) else but in Illinois."

In addition, the fact that a defendant voluntarily enters into a business transaction with an entity he knows to be an Illinois resident is also an important consideration." The court in *Cook Assocs.*, 304 N.E.2d at 31, found a single transaction to constitute "transacting business." There, a Delaware corporation telephoned an Illinois employment agency (the plaintiff) to hire one of the agency's clients, and then refused to pay the referral fee. The court found jurisdiction on the basis of that one telephone call.

In *Asset Allocation and Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir.1989), we distinguished *Cook Associates* on the ground that in *Cook Associates* the nonresident defendant telephoned its acceptance of the offer to the Illinois office, whereas in *Asset Allocation* the offer was made and accepted in California, and the only Illinois contacts were "paying and complaining." The present case is more akin to *Cook Associates* than *Asset Allocation*, since Heritage House was at all times doing business only in Illinois and only dealing with Continental from Illinois. Moreover, Heritage House agreed to the renewal of the certificates of deposits from its Illinois office.

6. While we believe there was more than a single transaction here, we note that one business transaction related to the cause of action is clearly a sufficient basis for jurisdiction. *See J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987); *McGowen, et al. v. Woodsmall Benefit Servs.*, 197 Ill.App.3d 400, 403, 143 Ill.Dec. 769, 771, 554 N.E.2d 704, 706 (Ill.App.Ct.1990); *Cook Assocs., Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27, 30 (1973). A single transaction which gives rise to the cause of action and amounts to defendant's purposeful availment " 'of the privilege of conducting activities within the forum State' " will support jurisdiction over a defendant. *McGowen*, 143 Ill.Dec. at 771, 554 N.E.2d at 706 (quoting *Gordon v. Tow*, 148 Ill. App.3d 275, 101 Ill.Dec. 394, 397, 498 N.E.2d 718, 721 (1986)). In *Capital Assocs. Development Corp. v. Roberts–Ohbayashi Corp.*, 138 Ill. App.3d 1031, 93 Ill.Dec. 563, 567–68, 487 N.E.2d 7, 11–12 (1985), an Illinois court listed factors relevant to whether a single transaction can be considered the transaction of business: "who initiated the transaction, where the contract was formed, and where performance, or a major part thereof, was to be made. [citations omitted]

*McGowen et al. v. Woodsmall Benefit Servs.*, 197 Ill.App.3d 400, 403, 143 Ill.Dec. 769, 772, 554 N.E.2d 704, 707 (1990). The relationship continued for over a year during which Continental provided Heritage House with interest rate information. The relationship continued when Continental telephoned Heritage House in Illinois to convince it to renew its certificates of deposit, and when it convinced Heritage House to deposit the $150,000 in the Savings & Loan. Continental was an out-of-state seller initiating and maintaining an ongoing relationship with an in-state purchaser. Continental's ongoing practice of transacting business with an Illinois corporation in Illinois brings it under Illinois jurisdiction pursuant to § 2–209(a)(1). *See Wiles v. Morita Iron Works Co.*, 152 Ill. App.3d 782, 105 Ill.Dec. 657, 662, 504 N.E.2d 942, 947 (1987) ("defendant transacted business in Illinois because it sold its products to a corporation that used the products in Illinois, the transaction was a money making event for defendant, and plaintiff's injury was a direct result of the transaction").

■ The physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute. *See J. Walker & Sons*, 821 F.2d at 402 (quoting *International Merchandising Assocs., Inc. v. Lighting Sys., Inc.*, 64 Ill.App.3d 346, 20 Ill.Dec. 838, 842, 380 N.E.2d 1047, 1051 (Ill.App.Ct. 1978)); *Cook Assocs.*, 304 N.E.2d at 30. Where a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant. *McGowen*, 143 Ill.Dec. at 772, 554 N.E.2d at 707. Also, the fact that Continental acted through an agent (an assistant vice-president) in its dealings with Heritage House does not affect our jurisdictional analysis; § 2–209(a) specifically includes such actions as a basis for jurisdiction. *See American Funeral Computer Serv., Inc. v. J.B. Floyd*, 165 Ill.App.3d 309, 116 Ill.Dec. 488, 490, 519 N.E.2d 78, 80 (1988).

Second, we also conclude that this course of dealing clearly relates to the causes of action of breach of contract and agency liability.[7] To establish jurisdiction, the claim must " 'lie[ ] in the wake of the commercial activities by which [the] defendant submitted to the jurisdiction of Illinois courts.' " *Deluxe Ice Cream Co.*, 726 F.2d at 1215 (quoting *Loggans v. Jewish Community Center of Milwaukee*, 113 Ill. App.3d 549, 69 Ill.Dec. 484, 490, 447 N.E.2d 919, 925 (1983)). Both the contract and agency claims are directly based on Continental's call to renew the certificates of deposits and its follow-up conversation ensuring the security of those deposits. Moreover, the initial contact by Continental and its dealings with Heritage House in Illinois for over one year are germane to the present action. We have held that the relationship between the transaction and the claim is particularly strong where there is an ongoing business relationship between an out-of-state defendant and a resident corporation. *See J. Walker & Sons*, 821 F.2d at 403.

2. § 2–209(a)(2): commission of tortious act in Illinois

The district court found that no tortious act was committed in Illinois, and that, if any tort was committed, it was in New York (Continental's place of business) or Arkansas (the location of the deposit) and not in Illinois. This holding was based on the court's application of the last act doctrine, which was applied in *Green v. Advance Ross Elecs. Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 661, 427 N.E.2d 1203, 1207 (1981) and *Gray v. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761, 762–63 (1961). The court reasoned that no tort occurred until Heritage House suffered damages and that the damages occurred in Arkansas when the Savings & Loan was declared insolvent and Heritage House was only repaid $100,-000 of its over $150,000 deposit.

7. In the next section we will discuss other means of exercising jurisdiction over Continental for the claims of negligent misrepresentation and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

Just as in the "transacting business" provision of § 2–209(a), there are two steps to acquiring jurisdiction under the "tortious act" provision: a tortious act must have been committed in Illinois and the cause of action must arise from that act. *See Turnock,* 816 F.2d at 334.

In order to sustain jurisdiction based on the commission of a tortious act in Illinois, the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature. Alternatively, the requirements of the tortious act provision of the long-arm statute may be met if plaintiff demonstrates an economic injury in Illinois coupled with activity indicating an intent to affect Illinois interests.

*Arthur Young & Co.,* 143 Ill.Dec. at 741, 554 N.E.2d at 676 (citations omitted).

We recently decided a case similar to the one before us now and believe that the result and reasoning in that case control this action. In *FMC Corp. v. Varonos,* 892 F.2d 1308, 1313 (7th Cir.1990), we held that, in a diversity action, the district court sitting in Illinois had jurisdiction over a nonresident defendant where that defendant had allegedly sent communications containing material misrepresentations to the plaintiff in Illinois. There, defendant sent telexes and telecopies of allegedly fraudulent monthly reports of its expenditures which were to be reimbursed by plaintiff. We concluded that communications made by the nonresident defendant, coupled with an intent to further her Illinois scheme, was a sufficient basis for jurisdiction, and that making such communications as part of a scheme to defraud an Illinois resident clearly evidenced an intent to affect an Illinois interest. *Id.*[8] In *FMC Corp.,* we cited with approval and relied upon *Club Assistance Program, Inc. v. Zukerman,*

594 F.Supp. 341 (N.D.Ill.1984). There, in an alleged effort to conceal looting and profiteering, the nonresident defendant sent less money to the Illinois plaintiff than required under the contract, and made telephone calls to Illinois during which it misrepresented its ability to pay its debts. 594 F.Supp. at 343. The court found this a sufficient basis for jurisdiction under § 2–209(a)(2). *Id.* at 345–46.

■ The tort alleged by Heritage House to have occurred in Illinois was Continental's misrepresentation that the entire amount of the $150,000 deposit would be secured for repayment, which relates to the misrepresentation cause of action and the alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. The misrepresentations occurred during telephone conversations initiated by Continental and placed to Heritage House in Illinois. Furthermore, Heritage House relied upon the misrepresentations in Illinois. The acts by Continental clearly evidenced an intent to affect an Illinois interest, because Continental knew that Heritage House was an Illinois corporation investing money for two Illinois limited partnerships.

■ The district court apparently believed that because Heritage House did not suffer an economic loss until the Savings & Loan was declared insolvent, and because that event occurred in Arkansas, that Arkansas was the situs of the tort. We respectfully disagree.[9] We have noted that "[a]n Illinois court does not acquire jurisdiction under the 'last act' doctrine simply because an economic loss is felt in Illinois when all conduct contributing to the injury occurred outside Illinois." *Turnock,* 816 F.2d at 335. Here, however, the heart of the wrong was the misrepresentation and the reliance, not the later insolvency of the Savings & Loan. Moreover, the ultimate

8. In *FMC Corp.,* we noted that

> [n]umerous cases have held that mailing money or messages to Illinois, if accompanied by the defendant's intent to affect Illinois interests, satisfies section 2–209's requirements. *See Club Assistance,* 594 F.Supp. at 347 & n. 9 (citing cases). Similarly, telephone calls between an Illinois plaintiff and a nonresident

defendant, if coupled with this intent, also satisfy the long-arm statute. *See id.* at 347 & n. 10 (citing cases).

892 F.2d at 1312 n. 9.

9. We note that Judge Mills did not have the benefit of our decision in *FMC Corp.,* which was decided after he issued the order in this case.

economic loss experienced by Heritage House was in Illinois, not in Arkansas.

This does not mean that Illinois jurisdiction is available to every Illinois resident who incurs a loss because of the actions of a nonresident. In this case, it is the communications from the nonresident to Illinois that form the basis for jurisdiction, a situation that is under the control of the nonresident defendant, not the Illinois plaintiff.

B. Constitutional Due Process Requirement

■ Even where jurisdiction exists under applicable state law, the exercise of that jurisdiction will violate the requirements of due process if the defendant has not "purposefully established 'minimum contacts' in the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), or if the litigation does not arise out of these contacts. *Id.* at 472, 105 S.Ct. at 2181. The focus of the court's inquiry thus must be on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

■ The district court concluded that it would be unreasonable to subject Continental to the jurisdiction of an Illinois court because it believed the most important factor in this analysis was that Continental was never physically present in Illinois while transacting business with Heritage House. We have held that in contract cases the defendant's presence in the state to conduct business is a *relevant* consideration. *See Deluxe Ice Cream Co.,* 726 F.2d at 1213. However, in *Deluxe Ice Cream Co.,* defendant's presence was a contact used to *support* jurisdiction. We have never held that the lack of presence in the forum state is determinative of the lack of jurisdiction. Moreover, the Supreme Court in *Burger King* stated that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State" where the commercial defendant's "efforts are 'purposefully directed' toward residents of" that state. 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Keeton v.*

*Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)) (emphasis in original); *see also Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1203–04 (7th Cir. 1985) (court declines "to create a rule that would require a defendant to step across state lines as a predicate for personal jurisdiction"). Also, Continental created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction. *McGowen,* 197 Ill.App.3d at 404, 143 Ill. Dec. at 772, 554 N.E.2d at 707. Thus, the district court erred in basing its decision on Continental's physical absence from the state.

The main factor in the minimum contacts due process analysis is not physical presence in the forum state but rather "foreseeability." The district court recognized this as a factor, but believed that Continental could not have reasonably foreseen that it would be haled into an Illinois court. The Supreme Court has stated that "the foreseeability that is critical to the due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Contacts with the forum state that are " 'random,' " " 'fortuitous' " or " 'attenuated' " will not be sufficient to establish that exercise of that state's jurisdiction was foreseeable to the defendant. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Keeton,* 465 U.S. at 774, 104 S.Ct. at 1478).

Continental purposefully availed itself of a business transaction with an Illinois corporation located and doing business in Illinois. One relevant inquiry is which party initiated the business transaction. *Madison Consulting,* 752 F.2d at 1202. Continental initiated both the original business relationship and the particular transaction at issue here—the renewal of the certificates of deposit. *See id.* at 1203 ("when a defendant is responsible for initiating several significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the Fourteenth

Amendment."). We believe that Continental's affirmative acts of business solicitation in Illinois made it reasonably foreseeable that it could be subject to the jurisdiction of an Illinois forum. Continental, as the seller of its service, reached out to Heritage House in Illinois to convince it to purchase those services. Moreover, as stated earlier, Continental maintained an ongoing relationship with Heritage House from the time of this initial solicitation until the time of the particular transaction giving rise to this litigation, lasting a year and a few months. The fact that an Illinois corporation is affected by the acts of a nonresident clearly is not sufficient to meet due process requirements. *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 572 (7th Cir.1986). But because Continental knowingly has reached out to that corporation and created a continuing relationship or obligation, it is subject to the jurisdiction of Illinois courts. *Burger King*, 471 U.S. at 473, 479–80, 105 S.Ct. at 2185–86; *see also FMC Corp.*, 892 F.2d at 1313 (defendant's act of sending telexes and telecopied reports to Illinois misrepresenting the costs of its operations constituted reaching out to the state such that defendant should have foreseen she could be subject to suit there).

After a court determines that the defendant has established minimum contacts with the forum state, it may also consider the relative convenience of litigating in that forum and the interests of the states involved. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184; *see also Madison Consulting*, 752 F.2d at 1201. But a party that has directed its activities at the forum state bears the burden of presenting a "compelling case" that these other considerations make jurisdiction in the forum unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184. The district court found it would be most inconvenient for Continental to defend this action in Illinois, since it "has no physical presence in Illinois, and in fact, Arkansas, not Illinois, is the situs of the transaction which is central

to the complaint." As we have discussed earlier, this first factor is not determinative, and the second factor is not accurate. Moreover, there is more potential evidence in Illinois and New York than in Arkansas. We believe that Continental's initiation and maintenance of affirmative contacts with an Illinois corporation make it reasonable to allow Heritage House to proceed in Illinois rather than in New York. Finally, we determine that there is a significant Illinois interest based on the fact that the plaintiffs are residents of, and doing business in, Illinois. *See Madison Consulting*, 752 F.2d at 1205; *Wiles*, 105 Ill.Dec. at 662, 504 N.E.2d at 947 ("Illinois has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957))).

### Conclusion

The district court's order granting Continental's motion to dismiss for lack of personal jurisdiction is reversed,[10] and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**10.** Because we hold that the district court had jurisdiction over Continental in this action, we need not address Heritage House's alternative claim that the district court should have deferred its dismissal for 60 days to allow Heritage House time to discover further facts supporting jurisdiction.