**SIDLEY & AUSTIN, a partnership, Plaintiff,**

v.

**Thomas W. HILL, Jr., Defendant.**

**No. 90 C 07261.**

United States District Court, N.D. Illinois, E.D.

April 23, 1991.

Nathan P. Eimer, Andrew George Klevorn, Sidley & Austin, Chicago, Ill., for plaintiff.

Thomas W. Hill, Jr., pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Thomas W. Hill, Jr. has moved to dismiss plaintiff Sidley & Austin's complaint for lack of personal jurisdiction.[1] The complaint seeks a declaratory judgment that Sidley & Austin properly discharged all of its obligations under a consulting agreement it entered into with Hill, that the agreement constituted a valid, enforceable contract, and that it has no further liability to Hill. For the reasons set forth below, the motion to dismiss is denied.

The critical facts are derived from the affidavits submitted by both sides; any conflict or discrepancy in those affidavits has been resolved in favor of Sidley & Austin. *See John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987) (citing *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir.1984)); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987); *Felicia, Ltd. v. Gulf Am. Barge, Ltd.*, 555 F.Supp. 801, 803 n. 1 (N.D.Ill.1983). This analytical bent turns out to be very important for purposes of this motion.

Sidley & Austin is a large law firm headquartered in Chicago, Illinois, with other offices in Los Angeles, New York, Washington, D.C., London, Singapore, and Tokyo. Hill was a partner at Sidley & Austin from 1981 until 1985, assigned to the firm's office in Dubai, United Arab Emirates. In 1985, however, Hill's relationship with the firm changed, and he became a "consultant" to Sidley & Austin. As a result of the change, Hill agreed, *inter alia*, to accept a retainer fee of $75,000 per year, plus $100 per hour for any time spent on client matters, and to obtain written permission from Sidley & Austin before engaging in any legal practice outside of the firm.

On December 10, 1990, Hill wrote a letter to Sidley & Austin partner Howard J. Trienans in Chicago, "advis[ing the firm] of the existence" of a claim against it and four individual partners (including Trienans). "The facts," Hill wrote, "reflect a number of causes of action and several measures of damages. Basically, my damages are measured by what I should have earned with the Firm as a partner during the period 1986–1990 and what I was paid under the termination agreement." Hill added that he "would be happy to submit this matter to arbitration...." Should arbitration prove unacceptable to Sidley & Austin, Hill wrote, "I will then proceed with litigation in Florida."

Sidley & Austin filed this suit "immediately after Hill's threat because it wished to obtain a quick resolution of this matter." Response at 2. Hill subsequently filed his own complaint in Florida state court, which Sidley & Austin removed to Florida federal court. *See Hill v. Sidley & Austin*, No. 91–8019 (S.D.Fla.) (Gonzalez, J.).[2] The firm's fully-briefed motion to dismiss that complaint for lack of personal jurisdiction or, alternatively, to transfer it to this court or stay it pending resolution of the issues in this suit, has not yet been ruled on by Judge Gonzalez.

A Illinois federal district court has personal jurisdiction over parties in a diversity action only if an Illinois state court would have such jurisdiction. *Heritage House*

---

1. Alternatively, Hill seeks a stay of this action pending determination of his Florida suit. *See infra.*

2. Hill's complaint essentially alleges that the consulting agreement violates the American Bar Association's Model Code of Professional Responsibility, DR 2–108(A), which provides that
    [a] lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.
    Model Code, DR 2–108(A). Hill seeks damages for lost earnings, misappropriated practice, and inadequate consulting referrals.

*Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 279 (7th Cir. 1990); *Turnock,* 816 F.2d at 334. A non-resident defendant like Hill may be sued in Illinois if "the minimum contacts with Illinois that due process requires are present." *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990); *see also Morgan v. GTECH Corp.,* No. 90 C 238, slip op. at 10, 1990 WL 251900 (N.D.Ill. Dec. 18, 1990) (1990 U.S.Dist. LEXIS 17,-252).[3]

Thus, we have personal jurisdiction over Hill if he has "certain minimum contacts" with Illinois "such that the maintenance" of Sidley & Austin's suit "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). It is "foreseeability," and not physical presence, that is critical; the due process analysis entails a determination of whether Hill's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *see also Heritage House Restaurants,* 906 F.2d at 283. Contacts with Illinois that are "random" or merely "fortuitous" will not be sufficient to "establish that exercise of [Illinois'] jurisdiction was foreseeable" to Hill. *Heritage House Restaurants,* 906 F.2d at 283 (citation omitted).

In other words, the minimum contacts requirement is satisfied if there is " 'some act by which the defendant purposefully avails himself of the privilege of conduct-ing activities within the forum State.' " *FMC Corp.,* 892 F.2d at 1313 (quoting *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir.1984)). If the story really is as it is told by Sidley & Austin, then we must conclude that Hill did purposefully avail himself of a business relationship with an Illinois partnership located and doing business in Illinois. *See Heritage House Restaurants,* 906 F.2d at 283.

Sidley & Austin maintains that "[i]n 1985, while still a partner in the Firm, Hill sent a letter to Howard J. Trienans, Chairman of the Executive Committee, in Chicago, Illinois which suggested an alteration of Hill's relationship with the Firm." Hunt Affidavit ¶ 6, at 2.[4] The consulting agreement Hill eventually accepted was the same as the one he originally submitted, save that Sidley & Austin suggested that he become a "consultant" rather than "counsel" to the firm. *Id.* at ¶ 7; *id.* at Attachment 1 (Hill's proposal); *see also* Hill Affidavit Exh. 1 (Trienans' response to proposal).

That Hill initiated the proposed change in the relationship is a particularly relevant inquiry. *Heritage House Restaurants,* 906 F.2d at 283; *see also Madison Consulting Group v. South Carolina,* 752 F.2d 1193, 1202 (7th Cir.1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction."). Hill's affirmative act of soliciting a change in his relationship with Sidley & Austin made it reasonably foreseeable that he could be subject to the jurisdiction of an Illinois court. *Heritage House Restaurants,* 906 F.2d at 284. Hill's knowing outreach to Sidley & Austin "created a continuing relationship or obli-

---

**3.** Illinois amended its long-arm statute effective September 7, 1989, to provide that its reach is "co-extensive with minimum due process requirements." *FMC Corp.,* 892 F.2d at 1311 n. 5. The relevant section now states that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution or the Constitution of the United States." Ill.Ann.Stat. ch. 110, para. 2–209(c) (Smith–Hurd 1983 & 1990 Supp.). Amended § 2–209(c) eliminates the need to employ the peculiar two-pronged inquiry used prior to 1989. *See Publications Int'l, Ltd. v. Simon & Schuster, Inc.,* 763 F.Supp. 309, 311 n. 3 (N.D.Ill. 1991).

**4.** Lawrence H. Hunt is a partner at Sidley & Austin, and is a member of the firm's Executive Committee. Hunt Affidavit ¶¶ 1–2, at 1. During "the relevant period," he was chairman of Sidley & Austin's International Operations Committee, and in that capacity worked with Hill. *Id.* at ¶ 3.

gation," thereby subjecting him "to the jurisdiction of Illinois courts." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985)).

We note further that, according to Sidley & Austin, Hill "submitted bills for consulting services to the Firm's principal office in Chicago"; he "obtained permission from the Firm's Chicago office" whenever he "wished to undertake independent representation of clients"; and that he "was covered by the Firm's insurance policies" for any legal advice rendered as a consultant to the firm. Hunt Affidavit ¶ 8, at 3.

On these grounds, we deny Hill's motion to dismiss for lack of personal jurisdiction, or to stay this action pending determination of similar issues in the Florida proceedings.[5] It is so ordered.

---

**5.** That being said, we must admit that we view Sidley & Austin's version of the facts somewhat skeptically. Hill, who after all ought to know, maintains that he hand-delivered his initial proposal to Trienans in *New York City* (not Chicago) "at a luncheon meeting during which Mr. Trienans advised me that the Firm would be terminating me as a partner." Hill Affidavit ¶ 3, at 1–2 (March 8, 1991); *see also Hill v. Sidley & Austin*, No. 91–8019, complaint at 3–4 (consulting agreement "entered to implement plaintiff's [Hill's] forced withdrawal from the Firm and termination of plaintiff's partnership interest in the Firm"). This suggests that one of the crucial underpinnings of our decision—that Hill initi- ated the change in the business relationship with Sidley & Austin (and that he sent his proposal to Chicago)—might not be as structurally sound as the firm would have the court believe.

We are certainly not accusing either Sidley & Austin or any of its affiants of playing fast and loose with the truth. On the other hand, plaintiff's counsel might review with his clients the Supreme Court's recent decision finding that "*any* party who signs a document, whether or not the party was required to do so, is subject to the certification standard of Rule 11." *Business Guides, Inc. v. Chromatic Communications Ent., Inc.*, —— U.S. ——, 111 S.Ct. 922, 930, 112 L.Ed.2d 1140 (1991) (emphasis in original).