THOMAS A. FOLEY, Plaintiff-Appellee, v. THE METROPOLITAN SANI-
TARY DISTRICT OF GREATER CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—88—2925

Opinion filed April 19, 1991.—Rehearing denied June 4, 1991.

Allen S. Lavin, of Chicago (James B. Murray and Ina S. Winston, of counsel), for appellants.

Edward J. King, of Chicago, for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff Thomas A. Foley was suspended for 30 days from his job with defendant, the Metropolitan Sanitary District of Greater Chicago (MSD), and following a hearing without plaintiff's participation before the Civil Service Board (Board), he was discharged from his job. On administrative review, the circuit court reversed the Board's decision on the ground that the Board had no jurisdiction to discharge plaintiff where the Board had failed to hold a hearing within 30 days of the

initial suspension. On appeal, defendants, the Metropolitan Sanitary District of Greater Chicago; its general superintendent Frank E. Dalton; plaintiff's supervisor, Earl Knight; plaintiff's department head, John M. Ryan; the Civil Service Board, its chairman, Gay-Lloyd Lott; and its individuals members, Richard Rochester and John L. Roach, contend that notice and hearing was sufficient.

Plaintiff worked for the MSD in the classified service as a Treatment Plant Operator II. On February 29, 1988, at 3:15 a.m., plaintiff was arrested by the Stickney police as he drove away from the MSD's West-Southwest sewage treatment plant in Stickney, Illinois, with approximately $1,000 of equipment belonging to the MSD.

Following an initial investigation, the MSD suspended plaintiff for 30 days commencing on March 1, 1988, and ending March 30, 1988. Notice of the suspension was mailed to plaintiff's Willow Springs address and received by plaintiff on March 2, 1988. The notice stated that specific charges would be filed seeking his termination. Plaintiff did not exercise his right to appeal this suspension.

On March 22, 1988, attorney Edward King appeared at the MSD offices and spoke with Ina Winston, the MSD's head assistant attorney. Winston stated at the March 28, 1988, hearing that King introduced himself and stated that he would be representing plaintiff in the termination case.

On March 24, 1988, the MSD filed formal written charges against plaintiff with the Board, all within the 30-day suspension period. It charged plaintiff with "conduct which tends to render his continued employment detrimental to discipline efficiency or reputation of the District's service." It sought discharge of plaintiff from the classified service.

The Board set the cause down for a hearing on March 28, 1988, at 2 p.m.

On March 25, 1988, the Board mailed to plaintiff, by registered mail, formal notification of the charges and the time and place of hearing. These were sent to plaintiff's last two known addresses, including the Willow Springs address to which copies of the earlier notice of suspension had been mailed and received by plaintiff.

In addition, on March 25, 1988, a summons dated March 24, 1988, and a copy of the charges were personally served on King at his law offices in Chicago.

On March 28, 1988, at 2 p.m., the Board opened the hearing. King appeared.

Winston introduced the formal charges, written summons, and proof of mailing. The return receipt had not yet been returned to the MSD.

The Board's hearing officer allowed the charges into evidence.

King then introduced into evidence a letter from himself to the Board, dated March 28, 1988. It stated, in relevant part, as follows:

"Approximately one week ago I was contacted by [a co-worker of plaintiff] ***. He asked me if I could provide legal assistance to his fellow employee. I told him to have the suspended employee call me at my law office.

The following day I was contacted by [plaintiff]. *** I told him to call me when and if he received the charges.

On March 22, 1988 while visiting the offices of the MSD on a matter unrelated to [plaintiff] I stopped by the MSD law department and asked for the attorney handling the Foley suspension.

Attorney Ina Winston introduced herself. I told her that I had been contacted by [plaintiff]. She told me that she thought the hearing was scheduled for the 28th of March. I responded that were I [plaintiff's] lawyer I could not prepare by that date. She made a phone call and learned the next date the Commission meets is April 19, 1988.

I called [plaintiff] at a number he gave me. I left messages on a phone answering machine that responded. I did not hear back from [plaintiff] regarding his receipt of any charges from the Civil Service Commission.

I have called and spoken to [plaintiff] at his home on two other occasions. When I spoke to him, on March 26, 1988, he had yet to receive any charges. He did not retain me as his attorney.

At 12:17 p.m. on March 28, 1988 I returned to my law office to find that a copy of charges and specifications regarding [plaintiff] were hand delivered to my office on the afternoon of Friday, March 25, 1988.

As a courtesy to this Commission, I appear today in response to the charges served on me on March 25, 1988.

I am not yet [plaintiff's] attorney of record. I do not know if he has yet been served with any notice regarding this hearing. I do not know if he has retained counsel.

I have twice called the phone number I received from [plaintiff] this afternoon. I got only a recorded message.

I would enter a special and limited appearance on behalf of [plaintiff] to protect his constitutional rights. I would argue that the Commission, as far as I know, has no jurisdiction over [plaintiff] in that he has yet to receive any notice of this hearing.

[Plaintiff] received notice as I did, within two hours of the hearing, the notice is defective and the Commission still has no jurisdiction."

On March 29, 1988, plaintiff received additional copies of the charges and a summons, which had been sent by registered mail on March 25, 1988.

On March 29, 1988, the MSD hired Hotline Messenger Service to personally serve plaintiff with the charges, summons and an accompanying letter advising him that the hearing was continued to April 19, 1988. The letter advised plaintiff that if he had any objection to the matter being continued to April 19, he could call the MSD offices and they would be glad to commence the hearing on March 30, 1988, if he so requested.

The sworn affidavit of Hotline's messenger was later introduced into evidence at the April 19, 1988, hearing, attesting that on March 29, 1988, he "personally delivered upon Thomas A. Foley" the documents, at the Willow Springs address.

On April 5, 1988, the MSD sent plaintiff a certified letter informing him that the matter would be heard on April 19, 1988. The return receipt shows plaintiff received the letter at his Willow Springs address on the following day, April 6, 1988.

At the April 19, 1988, hearing, plaintiff appeared before the Board represented by King, who filed a special and limited appearance and a motion to quash the service of summons which had been served on March 29, and March 30, 1988. The motion incorporated an affidavit from plaintiff stating he did not receive notice of the March 28 hearing until March 29. He did not receive notice that the hearing could be commenced on March 30, until 5:30 p.m. on March 30. He was not personally served, and instead his wife found the notice in their mailbox.

The MSD tendered a registered letter receipt dated March 25, 1988, addressed to plaintiff at Willow Springs and a registered letter receipt to plaintiff at a Chicago address. Winston stated the green cards were never returned to her. Winston also stated before the Board:

"On March 22, Mr. King came to my office. He said he is representing [plaintiff]. He asked all about the discovery proce-

dures, asked when the hearing would be. I told him it was going to be set for a special date on the 28th. He said he couldn't possibly be prepared. I said, 'Well, let me find out when the regular meeting date is.'

I found out it was April 19. I told him that. He said, 'I will not be prepared then I will want all of your documents.'

I said, 'There is no problem. You don't have to go through formal discovery motions and so on.' We had this discussion about procedures of the Civil Service Board."

The Board found:

"[W]ith regard to the March 28 hearing, there is no evidence that the respondent was served in advance of the hearing, whether it was a day or an hour in advance of the hearing. The evidence does not support the finding that he was served prior to that hearing. Nevertheless, the charges were filed in apt time, and we have an uncontroverted proof of service dated March 29, indicating that one Joe W. Handy, a messenger, personally served Foley at 151 Glenwood, Willow Springs, Illinois, 60480, a summons dated March 24, together with the charges filed, and that the hearing on March 28 and the hearing on March 29 respectively were continued from time to time and have now been continued to April 19.

The Board finds that it has acquired jurisdiction, that the respondent has been notified of the charges against him, and has been given an opportunity to defend against those charges.

So I don't think that the motion to quash the service of summons on March 29 can be sustained and accordingly is denied."

The Board held further that no action had been taken on March 28 to prejudice plaintiff. The Board refused to dismiss the charges. The Board offered to grant plaintiff a continuance from the April 19 date, but plaintiff declined.

The Board informed plaintiff that if he stood on the jurisdictional issue and did not participate in the hearing on the merits, the MSD would proceed with a prove up with the possible result of discharging plaintiff from service. Plaintiff remained present for the entire argument and ruling. He and his attorney left the hearing before the prove up.

King repeatedly stated to the Board that he would have "no objection to the granting of the motion to quash and re-serving [plaintiff] here and let the Board do what it may at this point as far as rescheduling any future hearing." He continued, "If in fact the Board is saying that he was not properly served for either of those hearing

dates then I would ask that the Board rule that—that the Board grant my just offered motion to quash and to re-serve [plaintiff] today. I have no objection to that whatsoever."

King stated his client would stand on the jurisdictional objection, and they left the meeting.

The hearing officer proceeded with the prove up.

On May 23, 1988, the Board filed its findings and discharged plaintiff after finding him guilty of conduct which tends to render his continued employment detrimental to the discipline, or efficiency or reputation of the MSD's service.

On June 14, 1988, plaintiff timely perfected a complaint for administrative review of the Board's findings, pursuant to section 4.14 of "An Act to create sanitary districts ***" (Ill. Rev. Stat. 1989, ch. 42, par. 323.14). Plaintiff also filed an emergency motion for temporary restraining order and motion for preliminary injunction and other relief. Plaintiff argued that the Board's order was contrary to the manifest weight of the evidence; contrary to personnel rules of the MSD; contrary to State statutes; and violative of his due process rights. He sought reinstatement of his former position, back pay, and attorney fees and costs.

On September 20, 1988, the court reversed the Board's order discharging plaintiff. It found that although plaintiff had been served with the formal charges and date of hearing within the 30-day period, plaintiff was denied the opportunity to have the hearing within that 30-day period. The court found that plaintiff had never asked for a continuance of the hearing.

On September 27, 1988, the MSD filed a notice of appeal, and the trial court stayed the effect of its September 20, 1988, order until further order.

The personnel rules of the MSD provide that it may suspend an employee for 30 days or less. (Rule 11.042(3).) He shall then be returned to employment "unless charges are filed." (Rule 11.042(5).) Charges must be filed "not less than five (5) days prior to the expiration of the suspension period." (Rule 11.051.) Plaintiff's charges were filed March 24, and the suspension period expired March 30.

The personnel rules provide that charges shall be "served personally upon the employee or by registered mail addressed to the employee at his last known residence." (Rule 11.052.) Plaintiff was served by registered mail on March 29, 1988, and was apparently personally served on that same day.

The relevant statute requires that a hearing be held "within thirty days from the date of suspension under" charges to remove or dis-

charge a classified Civil Service employee. "The hearing may be post-poned or continued with the consent of the accused." (Ill. Rev. Stat. 1989, ch. 42, par. 323.14.) Similarly, the personnel rules of the MSD provide that the charges "shall be heard by the Civil Service Board *** within thirty (30) days of the date of suspension under said charges." (Rule 12.03.) Plaintiff was suspended on March 1, and the hearing was initially convened March 28.

Even if it were true that plaintiff has a right to a hearing within 30 days, we agree with the decision in *Holliday v. Civil Service Comm'n* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358, as approved in *Perez v. Civil Service Comm'n* (1987), 153 Ill. App. 3d 176, 505 N.E.2d 1067, that such rights cannot be construed as unqualified. In *Holliday*, the court found that because the delay in the hearing was caused by the employee's discovery request, his rights were not infringed upon. It held that an employee has no absolute right to a hearing within 30 days where a hearing delay is attributed to the employee's conduct. Consequently, because the hearing delay was a result of the employee's actions, the Commission retained jurisdiction over the dispute.

Clearly, the 30-day hearing requirement in the personnel code cannot be read to be so inflexible that an employee, by merely requesting a continuance or asking for discovery of certain documents, is thereby able to divest the Commission of jurisdiction over a particular dispute. In the instant case, it could well be that King misled the MSD to believe that he was the attorney for plaintiff and suggest that he had requested a continuance to be prepared for trial.

The determinative question which this court is not able to answer on the record before us is whether or not King was plaintiff's attorney, when King visited Winston on March 22 and requested a continuance; was served with notice on March 25; and appeared before the Board on March 28.

The Board made no findings regarding when the attorney-client relationship between King and plaintiff began; whether King's March 22 meeting with Winston as well as subsequent conduct tended to show he had authority to act for plaintiff in the cause; whether King sought a continuance of the March 28 and April 19 hearing when he met with Winston; whether plaintiff, through King, waived all rights to rely on the fact that plaintiff was not tried within the alleged 30-day suspension period when King advised Winston he could not be ready for trial on March 28, or April 19, 1988; and whether notice to King on March 25 was sufficient notice of the March 28 hearing.

■ Generally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client notwithstanding whether the attorney has actually communicated such knowledge to the client. *In re Marriage of Mierlak* (1981), 100 Ill. App. 3d 228, 426 N.E.2d 1010, citing *People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 340 N.E.2d 598. See also *In re Marriage of Clarke* (1990), 194 Ill. App. 3d 248, 550 N.E.2d 1220; *County of Cook v. Schroeder* (1965), 55 Ill. App. 2d 449, 205 N.E.2d 257.

Attorney King received notice of the March 28, 1988, hearing on March 25, 1988. This would be sufficient notice to plaintiff, regardless of whether or not King communicated the information to his client. If King were acting as plaintiff's attorney, the Board would have met the requirement of providing sufficient notice of the March 28 meeting within the requisite 30-day time period.

■ The question of whether King was acting as plaintiff's attorney on March 22, 25, and 28, 1988, is a factual question, and one which the Board did not address. We therefore remand to the Board with directions to receive such evidence as it deems necessary and make a factual determination on this issue. See *Havlen v. Waggoner* (1981), 92 Ill. App. 3d 916, 416 N.E.2d 684 (litigants' arguments on appeal implicitly require factual determination regarding whether attorney made general appearance; case remanded for sole purpose of evidentiary hearing and making findings of fact on issues of whether attorney made general appearance and whether service of summons proper); see also *Armis Construction Co. v. Cosmopolitan National Bank* (1985), 134 Ill. App. 3d 177, 479 N.E.2d 1111 (court ordered supplemental arguments on issue of whether attorney represented plaintiff in any litigation at time attorney was served with notice).

■ In determining whether King acted as plaintiff's attorney, the Board should be guided by certain principles of law which we set forth here. Generally, in administrative matters, due process is satisfied by procedures suitable to the nature of the determination to be made and conforming to the fundamental principles of justice. (*Desai v. Metropolitan Sanitary District* (1984), 125 Ill. App. 3d 1031, 466 N.E.2d 1045.) An administrative body has broad discretion in conducting its hearing. Administrative procedure is simpler, less formal and less technical than judicial procedure. *Desai v. Metropolitan Sanitary District*, 125 Ill. App. 3d 1031, 466 N.E.2d 1045.

Whether or not an attorney-client relationship exists involves principles of contract and agency. In regard to the facts apparent from the record before us, we especially express concern that plaintiff has completely failed to provide in the record any affidavit or sworn

statement by himself stating that he did not believe King was his attorney, and the reasons therefor.

It is a question of fact whether the trier of fact believes that the attorney's appearance was unauthorized. (*Mierlak*, 100 Ill. App. 3d 228, 426 N.E.2d 1010.) Issues of witness credibility must be left to the trier of fact, which is able to hear and view the witnesses. See, *e.g., Mierlak*, 100 Ill. App. 3d 228, 426 N.E.2d 1010 (attorney reported to court that he had been engaged by respondent's brother; respondent failed to offer affidavits or testimony from his brother or the attorney that the appearance was not authorized, and offered only his own denial, which was insufficient to rebut the presumption of authorization). *Cf. People v. Mickow* (1978), 58 Ill. App. 3d 780, 374 N.E.2d 1081 (a nameless attorney who was never identified appeared at hearing on behalf of defendant; court held no personal jurisdiction was ever attained over the out-of-State defendant because he was never served, and defendant submitted uncontradicted affidavits stating he never retained an attorney or even communicated with the person who represented himself as defendant's attorney).

The Board should consider the March 22 meeting between Winston and King. On March 22, King appeared at the MSD's legal offices on behalf of plaintiff. He did not, for example, simply run into Winston on the street or in a restaurant and casually inquire about the Foley case. Instead, King went to the MSD's legal offices; sought out an attorney representing the MSD on this case; discussed in detail the discovery and hearing procedures; and, most significantly, negotiated with that attorney a delay from not one, but *two*, hearing dates before the Board. He did not casually remark that he was busy in March and April. Instead, he discussed it in enough detail to cause Winston to telephone for a postponed hearing date.

The Board may also consider the fact that King appeared on March 28, 1988, on behalf of plaintiff.

Notably, our supreme court rules prohibit an attorney from appearing before a court if that attorney has not filed an appearance. (107 Ill. 2d R. 11.) The record here does not show whether the Board has a similar rule.

■ Generally, an attorney has no right to appear as an attorney for another without the latter's authority. If there is no attorney-client relationship, the attorney does not owe a duty to appear and cannot lawfully and ethically do so. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.) The plaintiff in *Zych* told his attorney he would let him know if he wished his services. Unlike what appears to have happened in the present case, the attorney in *Zych* filed an appear-

ance without compensation only at the request of plaintiff's employer, as a favor.

Generally, where an attorney appears of record for a party, the presumption is that the appearance in such a capacity was duly authorized by the person for whom the attorney appears. (*Mierlak,* 100 Ill. App. 3d 228, 426 N.E.2d 1010, citing *Gray v. First National Bank* (1944), 388 Ill. 124, 129, 57 N.E.2d 363, 365.) The presumption may be rebutted by evidence to the contrary. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.) Also, an attorney's authority to appear may be implied or apparent authority and may arise from the circumstances and facts where there is a reasonable appearance, due to the acts of another, that the person is authorized to act as agent for such other person. See also *Meeker v. Gray* (1986), 142 Ill. App. 3d 717, 492 N.E.2d 508 (court found no affirmative evidence that defendant hired the attorney other than the attorney's entry of appearance five years prior to trial; notices went to the attorney and there was no indication that defendant was served, but defendant was never misled, so there was no error).

For example, in *Meldoc Properties v. Prezell* (1987), 158 Ill. App. 3d 212, 511 N.E.2d 861, after an attorney had filed a special and limited appearance on behalf of defendant, the defendant herself appeared and argued she never received notice, and the attorney had not been hired by her and had no authority to even file the special and limited appearance. Apparently the attorney had been retained by defendant's ex-husband, who was also a defendant in the underlying suit. Defendant produced a letter to her from the attorney, stating that the ex-husband had hired him, that he had filed the appearance, and that defendant might want to hire either him or someone else. This court held that there was no attorney-client relationship. Defendant had successfully rebutted the presumption of the attorney's authority to appear, and judgment against her was vacated. The record contains no similar evidence in the present case.

Furthermore, King's authorization to represent plaintiff may be established through proof of ratification. (*Gray v. First National Bank* (1944), 388 Ill. 124, 57 N.E.2d 363.) For example, the Board may find it significant that King continued to represent plaintiff at every stage of the proceedings before the Board, the circuit court and this court.

It may also find it significant that King first told Winston he was not prepared to conduct a defense at the hearing on March 22, and that King consistently argued thereafter that the defense could not be ready within the 30-day period. The Board may find that plaintiff's

conduct in permitting this continued argument of prejudice due to insufficient time to prepare ratified King's initial requests for continuance made to Winston on March 22.

King argued in his letter before the Board that plaintiff suffered prejudice for three reasons when he did not get additional time—within the 30 days—to prepare for the hearing. First, King argued that plaintiff had insufficient time to retain counsel. This argument is not persuasive. On February 29, plaintiff was arrested while allegedly attempting to steal equipment from the MSD during the night shift. On March 2, plaintiff received notice of his 30-day suspension and that the MSD would seek his termination. On March 20, plaintiff contacted King about this case. On March 25, charges and summons were delivered to King's law offices. On March 26, King spoke with plaintiff on the telephone. On March 28, King stated he left messages on plaintiff's answering machine and called and spoke with plaintiff on two other occasions; spoke with him on March 26; and appeared for him on March 28. Clearly, obtaining counsel was not a problem.

Second, King argued that plaintiff was prejudiced because he would have insufficient time to "inform counsel of the specifics of the charges alleged against him." Again, given the amount of communication between King and plaintiff, and King's receipt of the formal charges on March 25 at his law offices, we would find no prejudice.

Third, King argued that plaintiff was prejudiced because he would have insufficient time to "take[ ] any reasonable discovery." This is also not persuasive, considering the MSD's immediate acquiescence, through Winston, to permit King to delay the hearing past March, and past April, to some third time which would be agreeable to King.

Moreover, plaintiff suffered no prejudice as a result of the March 28 meeting of the Board. The Board convened as a formality, King specially appeared, and no evidence was taken beyond King's letter to the Board. No action was taken by King, or by the Board, at that meeting, which could prejudice plaintiff. The case was then continued, and the Board immediately served plaintiff again with notice of the charges and hearing which could be held either March 30 or April 19.

The Board has the power to administer oaths and secure by subpoena the attendance and testimony of witnesses and the production of books, papers or other evidence. (MSD Personnel Rule 12.03.) It should use these powers and any other relevant powers to secure the information needed to make findings regarding the questions this court has set forth above.

If on remand the Board determines that an attorney-client relationship existed prior to and on March 28; that notice was served on

Attorney King on March 25; that it therefore had jurisdiction to convene a hearing on March 28; and that the continuance of that hearing beyond the 30-day period was due to the conduct of plaintiff and his attorney, then defendant must evaluate his options in deciding whether or not to defend the case on the merits. If he wishes to do so, defendant should be permitted to present a defense on the merits before the Board. If he chooses to default and collaterally attacks the Board's rulings on the jurisdictional question, he will lose his right to defend the case on the merits if his jurisdictional argument does not prevail on appeal. See generally, R. Michael, 3 Illinois Practice: Civil Procedure Before Trial §10.7 at 127-28 (1989).

For the foregoing reasons, the judgment of the circuit court of Cook County reversing the decision of the Civil Service Board is reversed, and the Board's decision is reinstated.

Reversed and remanded to the Board with directions.

LORENZ, P.J., and MURRAY, J., concur.