Edward W. HAEDIKE, Plaintiff,

v.

KODIAK RESEARCH, LTD., a Canadian Company; Bombardier–Rotax, GmbH, an Austrian Company; and Fritz Hintermayr, GmbH, Bing–Vergaser–Fabrik, a German Company, Defendants.

No. 92 C 4812.

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1992.

Reconsideration Jan. 22, 1993.

David Leonard Cwik, Bernard R. Nevoral and Michael E. Tabor, Bernard R. Nevoral & Associates, Ltd., Chicago, IL, for plaintiff.

Gary W. Westerberg, Victoria A. Verhagen, Stephen P. Kenney, Lord, Bissell & Brook; Timothy John Murphy, Sedgwick, Detert, Moran & Arnold; and Bruce Herbert Schoumacher and Julie L. Trester, Querrey & Harrow, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Edward William Haedike brings this product liability action against Kodiak Research, Ltd. ("Kodiak"), Bombardier-Rotax, GmbH ("Rotax") and Fritz Hintermayer, GmbH, Bing-Vergaser-Fabrik (incorrectly sued as Bing Vergasser) ("Bing") for injuries he suffered in the crash of a Wizard ultralight aircraft, Model No. J-3BK440 in Mettawa, Illinois on June 8, 1991. Kodiak, Rotax and Bing each have filed motions to dismiss Haedike's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Additionally, Kodiak has filed a motion for partial summary judgment, seeking dismissal of all claims against it grounded in the theory of strict liability. For the reasons set forth below, we deny Rotax and Bing's motions to dismiss. Kodiak's motion to dismiss for lack of personal jurisdiction is granted, thus obviating the need to consider its motion for partial summary judgment.

### I. Background

The allegations of the complaint and the additional submissions of the parties reveal the following facts. Rotax is an Austrian company, engaged in the business of designing, manufacturing, distributing and selling in the United States certain engines and engine packs for aviation use. During all relevant times, Kodiak, a Canadian company, was the exclusive distributor in the United States of Rotax engines and engine packs. Bing, a German corporation, engages in the business of designing and manufacturing carburetors to be incorporated into Rotax engines and engine packs.

In the summer of 1984, Haedike purchased the Wizard, Model No. J-3BK440, Serial No. 45004, ultralight aircraft which was equipped with a Rotax 503 engine pack, Motor No. 3449880, including a Bing carburetor. This

Rotax engine pack was distributed by Kodiak to Ultralite Soaring, Inc., a Florida corporation, which incorporated the engine pack into the Wizard aircraft. On June 8, 1991, while flying the Wizard aircraft near Mettawa, Illinois, the air filter separated from the Bing carburetor of the Rotax engine pack, causing the aircraft to crash to the ground.

On June 22, 1992, Haedike filed suit against Kodiak, Rotax and Bing in the Circuit Court of Cook County, alleging negligence and strict liability in tort. Attorney Timothy J. Murphy filed on behalf of all defendants a document entitled "appearance and jury demand" on July 17, 1992. Additionally, on July 21, 1992, Murphy on behalf of Rotax filed a motion for an extension of time in which to answer or otherwise plead. On July 27, 1992, defendants removed the action to this court pursuant to 28 U.S.C. § 1441.

## II. Waiver

As a threshold matter, Haedike contends that defendants' actions during the pendency of the state court proceedings constitute a waiver of any objection to personal jurisdiction. Specifically, Haedike maintains that each defendant filed a "general appearance" in state court prior to removal and, as defendants would not be able to contest personal jurisdiction in state court, they are prohibited from doing so in this forum.

 We begin by noting that Illinois courts applying Illinois law find waiver of jurisdiction more readily than federal courts employing the Federal Rules of Civil Procedure. Indeed, were the Federal Rules to apply to the present circumstance, we would be compelled to conclude that none of the defendants waived their respective rights to contest personal jurisdiction. See Fed. R.Civ.P. 12(h)(1). However, contrary to Rotax's assertion,[1] the Federal Rules do not guide our determination. True, some courts within this district have held that waiver of personal jurisdiction is governed by the Federal Rules and not Illinois law. See, e.g., Mallard v. Mallard, No. 90-3335, 1992 WL 47998, at *5, 1992 U.S. Dist. LEXIS 2346, at

*10 (N.D.Ill. Mar. 4, 1992); D'Attomo v. Derata Corp., No. 90-6072, 1991 WL 5618, at *2, 1991 U.S. Dist. LEXIS 433, at *2 (N.D.Ill. Jan. 10, 1991); Robinson v. Town of Madison, 752 F.Supp. 842, 845 (N.D.Ill.1990). Nonetheless, in each of those cases plaintiffs' assertions of waiver were predicated on defendants' actions in the federal proceedings. Mallard, 1992 WL 47998, at *3, slip op. at *2–3 (diversity action which originated in federal court); D'Attomo, 1991 WL 5618, at *2, slip op. at *1–2 (action removed from state court, but plaintiff's waiver argument premised on defendants' general appearance in federal court); Robinson, 752 F.Supp. at 844–45 (diversity action which originated in federal court). In the instant action, Haedike's assertion of waiver is not based upon defendants' actions in this court, but rather upon their conduct in state court prior to removal. Although the parties have not cited, nor have we found, a case within this circuit addressing the question of which body of law governs the waiver issue under such circumstances, the impact of the above distinction was recently expounded upon by the Eighth Circuit. See Nationwide Eng'g & Control Sys., Inc. v. Thomas, 837 F.2d 345 (8th Cir.1988). The Thomas court began by noting that "[f]ollowing removal, the action is governed by the Federal Rules of Civil Procedure." Id. at 348 (citing Fed.R.Civ.P. 81(c)). As such, a defendant may lose a defense through the operation of Fed. R.Civ.P. 12(g) or 12(h). Id. Likewise, and significant to the present circumstance, to the extent that a defense would not be available to a defendant in state court prior to removal, that defense is deemed waived in federal court without consideration of the Federal Rules. Id. The rationale behind this rule is that "after removal, the federal court takes up the case where the state court left off." Id. (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974)). In other words, a defendant may not voluntarily submit to the jurisdiction of a state court and, upon an unwanted removal by the defendants, deny the jurisdictional reach of a federal court sitting in the same

---

1. Unlike Rotax, both Kodiak and Bing argue that *Illinois law* does not preclude them from contest-ing the exercise of personal jurisdiction in this case.

state. Any other result would amount to the countenance of intersystem forum shopping. Accordingly, the Eighth Circuit turned to Iowa law to determine if defendants' conduct in state court precluded them from contesting personal jurisdiction. Finding the court's analysis in *Thomas* persuasive, we turn to consider whether defendants waived under Illinois law their respective rights to contest personal jurisdiction.

Section 2–301 of the Illinois Code of Civil Procedure provides in pertinent part:

> Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant.... Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance.

Ill.Rev.Stat. ch. 110, ¶ 2–301 (1989). Any action taken by a defendant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to jurisdiction. *Lord v. Hubert*, 12 Ill.2d 83, 87, 145 N.E.2d 77, 80 (1957); *Pecoraro v. Kesner*, 217 Ill. App.3d 1039, 1043–44, 160 Ill.Dec. 874, 876, 578 N.E.2d 53, 55 (1st Dist.1991). The rationale driving this rule is that "a person cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists." *Lord*, 12 Ill.2d at 87, 145 N.E.2d at 80. Thus, to the extent that a defendant's actions constitute a general appearance, the defendant waives any objection to the exercise of jurisdiction over her person.

■ In light of its submission of the "appearance and jury demand," coupled with the request for a continuance to answer or otherwise plead, there can be no doubt that Rotax entered a general appearance in the Circuit Court of Cook County. *See Pecoraro*, 217 Ill.App.3d at 1045, 160 Ill.Dec. at 877, 578 N.E.2d at 56 (filing of jury demand coupled with physical appearance requesting continuance amounts to general appearance). As such, Rotax has waived its right to contest the exercise of jurisdiction over its person, and its motion to dismiss is denied.

■ Kodiak and Bing's actions, or lack thereof, present a different circumstance. Although attorney Murphy filed the "appearance and jury demand" on behalf of Kodiak and Bing in addition to Rotax, Murphy lacked authority to take such action on behalf of Kodiak and Bing. Indeed, by way of affidavit, Murphy explains that he represents neither Kodiak nor Bing, but filed the document on their behalf as a result of a clerical error. As the only action taken in state court on behalf of Kodiak and Bing in recognition of the action was unauthorized, neither defendant can be deemed to have waived their right to contest jurisdiction. *See Gray v. First Nat'l Bank of Chicago*, 388 Ill. 124, 129, 57 N.E.2d 363, 365–66 (1944); *Foley v. Metropolitan Sanitary Dist. of Greater Chicago*, 213 Ill.App.3d 344, 352–53, 157 Ill.Dec. 514, 521, 572 N.E.2d 978, 985 (1st Dist.), *appeal denied*, 141 Ill.2d 539, 162 Ill.Dec. 486, 580 N.E.2d 112 (1991). Accordingly, we turn to consider the propriety of the exercise of personal jurisdiction over Kodiak and Bing.

### III. Personal Jurisdiction

■ The present being an action brought in diversity, this court has jurisdiction over Bing and Kodiak (non-resident parties) only if an Illinois state court could have such jurisdiction. *Publications Int'l, Ltd. v. Simon & Schuster, Inc.*, 763 F.Supp. 309, 310 (N.D.Ill.1991); *E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.*, 736 F.Supp. 808, 809 (N.D.Ill.1990). An Illinois state court may obtain jurisdiction over a non-resident party by demonstrating either that the defendant is "doing business" within the state, or that it is "subject to jurisdiction under the state's long arm statute." *E.J. McGowan*, 736 F.Supp. at 809 (citing, *inter alia*, *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989)). Clearly, neither Bing nor Kodiak is "doing business" in Illinois, as that phrase is used in the common-law context. *See Publications Int'l*, 763 F.Supp. at 310; *E.J. McGowan*, 736 F.Supp. at 809–10. Neither maintains an office, mailing address, or telephone number in Illinois. Nor do they have any agents, employees, or real property in Illinois. Therefore, the existence of personal

jurisdiction in this case turns on the application of the Illinois long-arm statute. Ill.Rev. Stat. ch. 110, ¶ 2–209 (Supp.1992).

The Illinois long-arm statute is measured by federal constitutional standards. *Sidley & Austin v. Hill*, 763 F.Supp. 366, 368 n. 3 (N.D.Ill.1991); *Publications Int'l*, 763 F.Supp. at 311. More specifically, the statute's parameters are contiguous to the due process "minimum contacts" standard. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990); *Publications Int'l*, 763 F.Supp. at 311. Thus, the entities over whom personal jurisdiction is sought—Bing and Kodiak—must "have certain minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (The "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State."); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

It is "foreseeability," and not physical presence, that is critical; the due process analysis entails a determination of whether defendants' "conduct and connection with the forum State are such that they should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir.1990). Contacts with Illinois that are "random" or merely "fortuitous" will not be sufficient to "establish that exercise of [Illinois'] jurisdiction was foreseeable." *Heritage House Restaurants*, 906 F.2d at 283 (citation omitted). In other words, the minimum contacts requirement is satisfied if there is " 'some act by which [Bing and Kodiak] purposefully avail[ed] [themselves] of the privilege of conducting activities within [Illinois].' " *FMC Corp.*, 892 F.2d at 1313 (quoting *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir.1984)).

█ Resolving all factual disputes in favor of Haedike, the party asserting the existence of jurisdiction, we conclude that Bing's conduct in relation to the State of Illinois satisfies the minimum contacts requirement, rendering this court with personal jurisdiction over Bing. Bing's network in the United States is extensive, with business arrangements impacting the State of Illinois in three means. First, Bing has entered into an agreement with Bing Agency International, a Nebraska corporation, whereby Bing has granted Bing Agency International the "sole sales rights" in the United States of Bing carburetors, individual parts and spare parts to "wholesalers, retailers and repair shops for the replacement requirements in the United States." Haedike maintains, upon information and belief, that Bing Agency International distributes Bing carburetors into Illinois pursuant to its agency agreement with Bing. Second, Bing maintains direct relationships with United States companies. According to Haedike, these companies purchase Bing carburetors directly from Bing, distributing the product in the Chicago area through various dealers. Finally, Bing carburetors enter Illinois via European customers of Bing. For instance, Bing sells its carburetors to Rotax, a European company, which incorporates those carburetors into its aircraft engines. The Rotax engines are then sold to Illinois companies, such as Quad City Ultralight Aircraft Corporation which builds aircraft at its plant in Moline, Illinois. As an illustration of the extent of Bing's network in the United States and specifically Illinois, Haedike aptly notes that every BMW motorcycle sold in the United States is equipped with a Bing carburetor. There are countless number of these motorcycles on the streets of Chicago and, consequently, numerous Illinois dealers supplying the demand for Bing replacement parts. Without question, Bing placed its products, including the allegedly defective carburetor incorporated into Haedike's aircraft, into "the stream of commerce" with the expectation that they would be purchased by consumers in Illinois. *See Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir.1992) (reaffirming the viabili-

ty of the stream of commerce theory despite the Supreme Court's decision in *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion)). Bing's status as a foreign corporation pales in comparison to its aggressive economic strategy which included the development and supply of an Illinois market. To that end, Bing should have reasonably foreseen being subjected to the jurisdiction of an Illinois court (and thus a federal court sitting in Illinois), and its motion to dismiss is denied.[2]

■ Haedike's response to Kodiak's motion was based entirely on the contention that Kodiak has waived its right to contest the exercise of jurisdiction over its person, an issue resolved above against Haedike. As such, Haedike has not put forth any facts relating to Kodiak's contacts with Illinois, the forum state. Moreover, neither the complaint nor any other pleading submitted by Haedike speak to this issue. It is settled law that plaintiff bears the burden to establish a *prima facie* case supporting the existence of personal jurisdiction. *See Turnock v. Cope*, 816 F.2d 332, 334–35 (7th Cir.1987). Haedike has offered absolutely no evidence to indicate that Kodiak may properly be subjected to this court's jurisdiction. Consequently, Haedike has not met his burden. We note Haedike's assertion that he could not respond to the substance of Kodiak's motion without further discovery. This contention, however, is disingenuous in that, after this court had denied his request for leave to limit briefing to the waiver issue, Haedike filed a surresponse detailing Bing's business contacts with Illinois. That Haedike elected not to file a similar surresponse addressing the substance of Kodiak's motion to dismiss can only be viewed as an

unsuccessful strategic choice. Accordingly, we grant Kodiak's motion to dismiss.[3]

## IV. Conclusion

For the reasons set forth above, we deny Rotax and Bing's motions to dismiss for lack of personal jurisdiction. Kodiak's motion to dismiss is granted, thus obviating the need to consider its motion for partial summary judgment. It is so ordered.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

In an order dated December 21, 1992, this court denied defendant Bombardier–Rotax GmbH's motion to dismiss for lack of personal jurisdiction. We reasoned that, because Rotax had waived the defense in state court by entering a general appearance prior to removal, Rotax was precluded from contesting personal jurisdiction in this court. Rotax now moves for reconsideration of that order.

It is settled law that motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir.1984)). As such, this court will not entertain a motion for reconsideration that merely reiterates arguments previously raised. *In re Stotler & Co.*, No. 91–1178, slip op. at 2, 1991 WL 268051 (N.D.Ill. Dec. 3, 1991); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983); *see also Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."). Further, a

---

2. As an alternative ground for dismissal of Haedike's complaint, Bing contends that it was not properly served. Bing acknowledges that Bing Agency International was served on behalf of Bing, but claims that such service was improper because the two companies bear no relationship. Bing's contention is belied by the written agency agreement between Bing and Bing Agency International. Pursuant to the terms of that agreement, Bing exercises sufficient control over the operations of Bing Agency International to ren-

der service in this case proper. *See Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill.App.3d 594, 602–06, 105 Ill.Dec. 39, 45–47, 503 N.E.2d 1045, 1051–53 (1st Dist.), *appeal denied*, 112 Ill.2d 595 (1986), *aff'd*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).

3. As we grant Kodiak's motion to dismiss for lack of personal jurisdiction, Kodiak's motion for partial summary judgment is now moot.

motion for reconsideration may not be employed as a vehicle to introduce new evidence that could have been produced prior to the entry of judgment. *Publishers Resource,* 762 F.2d at 561. "Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." *Id.*

The gravamen of Rotax's present motion can be summarized as follows. Rotax contends that its general appearance in state court was filed by mistake. As such, citing *Hahn v. Wiggins,* 23 Ill.App.2d 391, 163 N.E.2d 562 (1st Dist.1960), Rotax maintains that the Illinois courts would allow it to withdraw the general appearance and substitute in its place a special appearance, thereby enabling it to contest personal jurisdiction. As it happened, however, Rotax was never afforded this opportunity in state court because by the time it discovered its mistake, the case had already been removed to this court.

Assuming that the Illinois courts would have allowed Rotax to withdraw its general appearance, Rotax nonetheless is not entitled to the relief it presently seeks. Admittedly, Rotax knew about the mistake prior to its motion to dismiss filed in this court. Indeed, in both its memorandum in support of the motion to dismiss and its reply brief, Rotax opted to ignore the presently advanced argument, acting under the erroneous assumption that the Federal Rules of Civil Procedure afforded it a means to contest personal jurisdiction. This omission was Rotax's second mistake. Recognizing the lapse, Rotax appeals to the court not to punish it for its attorneys' errors. However, to the extent that capital defendants are bound by the mistakes of their attorneys, *see Coleman v. Thompson,* — U.S. —, — – —, 111 S.Ct. 2546, 2566–68, 115 L.Ed.2d 640 (1991) ("Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"), we see no inequity in holding Rotax to the same standard. Accordingly, Rotax's motion

for reconsideration is denied. It is so ordered.