**PUBLICATIONS INTERNATIONAL, LTD., an Illinois corporation, Plaintiff,**

**v.**

**SIMON & SCHUSTER, INC., a New York corporation, and Twin Peaks Productions, Inc., a California corporation, Defendants.**

**No. 90 C 05817.**

United States District Court, N.D. Illinois, E.D.

March 20, 1991.

Wayne B. Giampietro, Sharon Marie Goss, Witwer, Burlage, Poltrock & Giampietro, Chicago, Ill., for plaintiff.

Samuel Fifer, Karen H. Flax, Sonneschein, Nath & Rosenthal, Richard Lehv, Laurence S. Rickles, Weiss, Dawid, Fross, Zelnick & Lehrman, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Publications International, Ltd. ("PIL") filed this action seeking a declaratory judgment that its admittedly unlicensed book, "Welcome to Twin Peaks—A Complete Guide to Who's Who & What's What," does not infringe any trademark or copyright registered or owned by Twin Peaks Productions, Inc. ("TP Productions").[1] 28 U.S.C. §§ 1332, 1338, 2201, 2202 (1988). TP Productions has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) ("lack of jurisdiction over the person") and 12(b)(3) ("improper venue"). For the reasons set forth herein, we grant the motion and dismiss the complaint.

### I.

PIL is a company which publishes a variety of consumer resource books and periodicals (including "Consumer Guide"). PIL claims that its publications "evaluate, critique and comment upon products and current events which impact the purchasing public." Complaint at 2. PIL is an Illinois corporation with its principal place of business in Lincolnwood, a Chicago suburb. It also maintains a small office in New York City. "Welcome to Twin Peaks" contains 128 pages of episodic plot summary, character description, and illustrative photographs. Its cover price is $3.95.

TP Productions produced the much-ballyhooed (but now apparently cancelled) network television series "Twin Peaks," the (as PIL's book aptly puts it) "loopy, brooding, and surealistic" prime-time soap opera that generated critical acclaim (fourteen Emmy nominations in 1990) and, at least initially, a large and rabid viewing audience. The production company is incorporated in California, and has its principal place of business in that state as well. It holds copyrights in all of the Twin Peaks programs thus far aired, and also owns various Twin Peaks trademarks.

On October 5, 1990, TP Productions' New York counsel sent a letter to PIL's New York office demanding that PIL discontinue publication of "Welcome to Twin Peaks." PIL promptly filed an amendment to its original action adding TP Productions as a defendant.

### II.

■ The party asserting the existence of jurisdiction bears the burden of proof. *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971); *see also Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988). A federal district court in Illinois has personal jurisdiction over·a non-resident party "only if an Illinois state court could have such jurisdiction." *E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.,* 736 F.Supp. 808, 809 (N.D.Ill. 1990) (citations omitted). An Illinois state court might obtain jurisdiction over a non-resident party by demonstrating either that the defendant is "doing business" within the state, or that it is "subject to jurisdiction under the state's long arm statute." *Id.* (citing, *inter alia, Asset Allocation & Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 570 (7th Cir.1989)). TP Productions is clearly not "doing business" in Illinois, as that phrase is used in the common law context. It does not maintain an office, mailing address, or telephone number in Illinois. It does not have any agents, employees, or real property in Illinois. *See E.J. McGowan,* 736 F.Supp. at 809–10. Therefore, we will focus on the reach of the state's long-arm statute.

PIL contends that Illinois' long-arm statute, Ill.Ann.Stat. ch. 110, para. 2–209 (Smith–Hurd 1990 Supp.),[2] would plainly

---

**1.** The complaint (filed October 4, 1990) originally named only Simon & Schuster, Inc. ("Simon & Schuster") as a defendant. An amendment to the complaint (October 11, 1990) added TP Productions. PIL and Simon & Schuster have apparently settled their differences out of court.

**2.** In pertinent part, the statute reads as follows:

confer jurisdiction over TP Productions to a state court, and hence a federal court. It argues that:

> there is no question that [TP Productions] has produced a television program which has been shown within the State of Illinois weekly for several months. The sole purpose of producing this, or any other commercial television program is to convince the public to watch it. Television programs continue to be made and shown by commercial television stations only if they have sufficient ratings to justify their continued exhibition. If insufficient numbers of viewers "tune in," the program is canceled, and it disappears from the air waves. Thus, the entire effort of [TP Productions] in producing its television show is to devise a show or series of shows which will catch the public's fancy. [TP Productions] has been successful in this attempt. It was this success which led to the preparation and publications of [PIL]'s book, the purpose of which was to analyze the popularity of Twin Peaks and to provide the public with further information about that television series.

PIL's Memorandum at 6.

The Illinois long-arm statute is measured by federal constitutional standards. *Morgan v. GTECH Corp.*, No. 90 C 238, slip. op. at 10, 1990 WL 251900 (N.D.Ill. Dec. 18, 1990) (1990 U.S.Dist. LEXIS 17,252).[3] More specifically, the statute's parameters are contiguous to the due process "minimum contacts" standard. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990). Thus, the person over whom personal jurisdiction is sought—TP Productions—must "have certain minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

The due process analysis entails a determination of whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. The "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The minimum contacts requirement is satisfied if there is "'some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state.'" *FMC Corp. v. Varonos*, 892 F.2d at 1313 (quoting *Jacobs/Kahan &*

(a) Any person, whether or not a citizen of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

. . . .

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

. . . .

(f) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him of her is based upon subsection (a). Ill.Ann.Stat. ch. 110, para. 2–209 (Smith–Hurd 1990 Supp.).

**3.** On September 7, 1989, the Illinois legislature amended ¶ 2–209 to make the reach of the long-arm statute co-extensive with the due process clause. *E.J. McGowan*, 736 F.Supp. at 810 n. 5. This, in fact, had been the original interpretation of the statute. *See, e.g., Nelson v. Miller*, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). Subsequently, however, courts adopted a two-pronged inquiry requiring separate examination "into whether [¶¶] 2–209 confers jurisdiction and whether the exercise of jurisdiction comports with minimum due process standards." *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990). The 1989 changes to the law eliminated the need to employ the bifurcated analysis. *Id.*

**312**

Co. v. Marsh, 740 F.2d 587, 592 (7th Cir. 1984)).

■ TP Productions' contact with Illinois is quite limited. It produces a television show and sells that show to ABC. The network's local affiliates, including those in Illinois, then broadcast the show, which is presumably viewed by a segment of the state's population. Nevertheless, PIL maintains that "[h]aving sought the benefits" of widespread exposure in Illinois (and particularly in Chicago, "one of the top three television markets in the country"), it must now defend itself against PIL's action for a declaratory judgment absolving PIL of alleged trademark or copyright infringement.

We think TP Productions' contact with Illinois too attenuated to support personal jurisdiction over it in this forum. The context of the instant suit is far different from one alleging, say, defamation, or invasion of privacy. *See United Medical Laboratories v. Columbia Broadcasting System, Inc.*, 256 F.Supp. 570 (D.Or.1966) (federal court hearing defamation action has jurisdiction over Walter Cronkite as producer of television show, although Cronkite had no other contacts with jurisdiction); *Pegler v. Sullivan*, 6 Ariz.App. 338, 432 P.2d 593 (1967) (state court hearing invasion of privacy suit has jurisdiction over Ed Sullivan as producer of television show, although Sullivan had no other contacts with jurisdiction). Here, PIL's declaratory judgment action stems from its publication of "Welcome to Twin Peaks," and we agree with TP Productions that broadcast of the television series is irrelevant to the determination of whether the book infringes upon the production company's copyrights or trademarks. All other things being equal, that fundamental question would still require resolution even if Twin Peaks had never aired in Illinois—indeed, if it had never aired at all. *Cf. Tonka Corp. v. TMS Entertainment, Inc.*, 638 F.Supp. 386, 390 (D.Minn.1985) ("The fact that a defendant's contacts with a forum state are the activities which give rise to a plaintiff's cause of action is an important consideration supporting a finding of personal jurisdiction.")

(citations omitted). PIL's apparent contention that its cause of action *does* arise out of the broadcast of Twin Peaks is not compelling. PIL argues that

> [t]he writing of this book grew out of [TP Productions'] purposeful activity of convincing as many persons as possible to view its show. That it was successful in doing so, led both to its profit and to the preparation of this book. Had [TP Productions] not been successful in producing a popular show, watched by millions of viewers, including millions within Illinois, the book at issue here would never have been written.

PIL's Memorandum at 6–7.

As TP Productions points out, however, PIL "can hardly claim that it was the success of 'Twin Peaks' in *Illinois* that led it to publish and distribute its infringing book *throughout the United States.*" TP Productions' Reply at 5–6 (emphasis added).

Moreover, the cases cited by PIL in support of its position are "standard fare" personal jurisdiction decisions where the cause of action arose from the defendant's foreseeable contacts with a particular forum. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (libel action stemmed from publication and distribution of magazine in the forum state; personal jurisdiction met due process requirements). We reiterate that PIL's suit is not inextricably entwined with the television broadcast of Twin Peaks. Rather, it is the publication of the unlicensed book that is at the root of the lawsuit. In that sense, TP Productions' contacts with Illinois are merely fortuitous, and thus insufficient to support personal jurisdiction. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

In short, TP Productions' contacts with Illinois are not such that we could reasonably say that it "purposely availed itself of the privilege of conducting activities" within the state, *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), or that it might rationally anticipate being haled into an Illinois court, whether state or federal—particularly

where the cause of action is essentially unconnected to those contacts.[4]

### III.

Because we do not have personal jurisdiction over TP Productions, we dismiss the complaint against it. We need not address the merits of TP Productions' Rule 12(b)(3) venue argument, since its Rule 12(b)(2) discussion is dispositive. PIL's motion to enjoin TP Productions from litigating this cause in any other forum is moot.[5] It is so ordered.

---

**4.** Sending the infringement letter to PIL's New York office does not confer personal jurisdiction over TP Productions. *See, e.g., E.J. McGowan,* 736 F.Supp. at 812.

**5.** TP Productions has filed suit against PIL in New York. *See Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* No. 91 CIV 0626 (S.D.N.Y.) (Martin, J.).