**ELECTRONIC SIGNALS PRODUCTS, INC., an Illinois Corporation, Plaintiff,**

v.

**EASTERN ELECTRONIC CO., LTD., (Taiwan), and Eastern International, Inc., an Indiana Corporation, Defendants.**

**No. 91 C 3166.**

United States District Court, N.D. Illinois, E.D.

Jan. 6, 1992.

---

**3.** Under the second amended complaint, Count XI no longer contains a claim of aiding and abetting against Long Grove.

Daniel V. Kinsella, Hough, Cook, Weatherhead & Kinsella, Chicago, Ill., for plaintiff.

Robert M. Greco, Thomas D. Rosenwein, Schaefer, Rosenwein & Fleming, Terry M. Grimm, Winston & Strawn, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff Electronic Signal Products, Inc. ("ESP") brings this two-count complaint against Eastern Electronic Co., Ltd. ("EEC") and Eastern International, Inc. ("EII"), seeking an accounting and damages for breach of contract. Presently before this court are (1) EEC's motion to

dismiss for lack of personal jurisdiction and insufficient service of process, and (2) ESP's motion to assess costs for personal service of process. For the reasons as set forth below, both motions are denied.

## I. MOTION TO DISMISS STANDARD

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

## II. BACKGROUND

ESP is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Cook County, Illinois. EEC is an entity incorporated under the laws of the Republic of China, with its principal place of business in Taiwan. EII, formerly known as Dantec, Inc. ("Dantec"), is an Indiana corporation, having its principal place of business in Bloomington, Indiana.

On April 8, 1981, ESP and EEC entered into a contract whereby ESP granted EEC license to manufacture certain radio frequency devices developed by ESP. In accordance with the terms of the contract, EEC was to pay ESP a license fee of ten percent of the net sales price (FOB Taiwan) of each unit sold by EEC in the United States, Canada or Mexico, and five percent of the net sales price (FOB Taiwan) of each unit sold elsewhere. In addition, the license agreement explicitly appoints Dantec, now known as EII, as the representative of EEC in the United States.

In the years 1981 through 1983, Dantec and its successor EII effected regular accountings and royalty payments to ESP for EEC's sales. These payments, however, ceased in or about June of 1983—the resignation date of John Ma, president of ESP. Upon leaving ESP, Ma claimed the rights to the royalties under the April 8, 1981 contract. ESP disputed Ma's claim, bringing an action in the Circuit Court of Cook County. During the pendency of that action, EEC notified both EII and ESP that in light of the controversy, EEC would not pay royalties to either ESP or Ma. Further, EEC appointed EII as its agent in the United States to negotiate and execute a settlement. In 1988, the ESP–Ma action was resolved in favor of ESP. Despite such resolution and despite the fact that EEC continues to manufacture and sell the radio frequency devices, EEC and EII have refused to make any further royalty payments. Accordingly, on May 22, 1991, ESP filed this action against EEC and EII, contending that defendants' refusal to tender such payments constitutes a breach of contract.

## III. PERSONAL JURISDICTION

EEC now moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person. The party asserting the existence of jurisdiction—in the instant case, ESP—bears the burden of proof. *Publications Int'l, Ltd. v. Simon & Schuster, Inc.*, 763 F.Supp. 309, 310 (N.D.Ill. 1991); *Boden Products, Inc. v. Novachem, Inc.*, 663 F.Supp. 226, 229 (N.D.Ill.1987). As this case is brought in diversity, this court has jurisdiction over EEC (a non-resident party) only if an Illinois state court could have such jurisdiction. *Publications Int'l*, 763 F.Supp. at 310; *E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.*, 736 F.Supp. 808, 809 (N.D.Ill. 1990).

An Illinois state court may obtain jurisdiction over a non-resident party by demonstrating either that the defendant is "doing business" within the state, or that it is "subject to jurisdiction under the state's long arm statute." *E.J. McGowan*, 736 F.Supp. at 809 (citing, *inter alia, Asset Allocation & Management Co. v. Western*

*Employers Ins. Co.,* 892 F.2d 566, 570 (7th Cir.1989)). EEC clearly is not "doing business" in Illinois, as that phrase is used in the common-law context. *See Publications Int'l,* 763 F.Supp. at 310; *E.J. McGowan,* 736 F.Supp. at 809–10. EEC does not maintain an office, mailing address, or telephone number in Illinois. Nor does it have any agents, employees, or real property in Illinois. Therefore, the existence of personal jurisdiction in this case turns on the application of the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, ¶ 2–209 (Supp.1991).

■ The Illinois long-arm statute is measured by federal constitutional standards. *Sidley & Austin v. Hill,* 763 F.Supp. 366, 368 n. 3 (N.D.Ill.1991); *Publications Int'l,* 763 F.Supp. at 311. More specifically, the statute's parameters are contiguous to the due process "minimum contacts" standard. *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 n. 5 (7th Cir.1990); *Publications Int'l,* 763 F.Supp. at 311. Thus, the entity over whom personal jurisdiction is sought—EEC—must "have certain minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (The "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State."); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ It is "foreseeability," and not physical presence, that is critical; the due process analysis entails a determination of whether EEC's "conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990). Contacts with Illinois that are "random" or merely "fortuitous" will not be sufficient to "establish that exercise of [Illinois'] jurisdiction was foreseeable." *Heritage House Restaurants,* 906 F.2d at 283 (citation omitted). In other words, the minimum contacts requirement is satisfied if there is "'some act by which [EEC] purposefully avail[ed] [itself] of the privilege of conducting activities within [Illinois].'" *FMC Corp.,* 892 F.2d at 1313 (quoting *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir.1984)).

■ Resolving all factual disputes in favor of ESP, we conclude that EEC's conduct with regard to the State of Illinois satisfies the minimum contacts requirement, rendering this court with personal jurisdiction over EEC. The basis of this lawsuit is the alleged breach of the April 8, 1981 contract. That contract was initiated, negotiated and executed by EEC in Illinois. Moreover, as noted by ESP, the subject matter of the contract—the intellectual property right—existed, if at all, under Illinois law. As such, this dispute is likely governed by Illinois law, giving Illinois "a substantial interest in adjudicating this dispute." *Jacobs/Kahan & Co.,* 740 F.2d at 592–93. Illinois' interest in adjudication, coupled with EEC's substantial contacts with the State during the initiation, negotiation and execution of the contract, made it reasonably foreseeable that EEC could be subjected to the jurisdiction of an Illinois court. *See id.* Accordingly, EEC's motion to dismiss for lack of personal jurisdiction is denied.

## IV. SERVICE OF PROCESS

According to the affidavit of Daniel V. Kinsella, attorney for plaintiff, ESP attempted to serve EEC with a summons and complaint on six separate occasions. In conjunction with the filing of this action on May 22, 1991, ESP attempted to serve the first summons by mail on EEC in care of Michael T. Welch, EEC's attorney in San Francisco, California. Rather than returning the enclosed acknowledgement of service, Welsh informed Kinsella that he is not EEC's agent for service of process.

After failing to obtain service through Welch, ESP attempted to serve by mail EII as an agent of EEC. Once again, no acknowledgment of service was returned. Instead, by letter dated June 26, 1991, Welch advised Kinsella that EII was not EEC's agent for service. On August 1, 1991, ESP caused two alias summons to issue. The first summons was sent to EEC in Taiwan via international registered mail pursuant to Rule 4(i)(1)(D). The second summons and acknowledgment was sent by regular mail to EEC in Taiwan pursuant to Rule 4(c)(2)(C)(ii). Neither return receipt nor acknowledgment has been returned. Plaintiff's fifth attempt at service came on August 28, 1991, when ESP sought an alias summons to serve on the Illinois Secretary of State. Such service was effected, and pursuant to the Illinois Business Corporation Act, Ill.Rev.Stat. ch. 32, ¶ 5.30, a copy of the process and notice of the service was transmitted to EEC by international registered mail. On this occasion, ESP received a return receipt, stamped "Eastern Electronic Co., Ltd." After learning of EEC's objection to the method of service employed by ESP on August 28, 1991, plaintiff requested that the clerk of the court issue another alias summons. This summons was left with the clerk on October 30, 1991, to be dispatched by international mail, return receipt requested pursuant to Rule 4(i)(1)(D). ESP makes no assertion of fact regarding the return of this receipt.

EEC, claiming that none of the above described attempts at service were effected, moves for dismissal of ESP's complaint pursuant to Fed.R.Civ.P. 12(b)(5). In response, ESP contends that the alias summons mailed to both EII in Indiana and EEC in Taiwan were proper and effective under Rule 4(c)(2)(C)(ii). In addition, ESP argues that the August 28, 1991 service on the Secretary of State was proper under the Illinois Business Corporation Act.[1] We address each method of service in turn.

### 1. Service Pursuant to Rule 4(c)(2)(C)(ii)

Service of parties who are neither inhabitants nor found within the state in which the district court is held is governed by Fed.R.Civ.P. 4(e). Under Rule 4(e), in the event that a federal statute allows extraterritorial service of process, service may be accomplished under the circumstances and in the manner prescribed in the statute or in accordance with the federal rules. In the alternative, when a statute of the forum state provides for extraterritorial service, service may be effected under the state procedures.

▪ This case is devoid of a federal statute authorizing extraterritorial service of ESP. It is well established that Rule 4(c)(2)(C)(ii) does not supersede Rule 4(e), and thus extraterritorial service by mail will only be effective if sanctioned by the forum state's rules. *Winder Licensing, Inc. v. King Instrument Corp.*, 131 F.R.D. 538, 541–42 (N.D.Ill.1990); *Epstein v. Wilder*, 596 F.Supp. 793, 795 (N.D.Ill.1984); *Chronister v. Sam Tanksley Trucking, Inc.*, 109 F.R.D. 1 (N.D.Ill.1983). According to Illinois statutory law, parties located outside of the forum state must be personally served. *See* Ill.Rev.Stat. ch. 110, ¶¶ 2–208,–209 (1983 & Supp.1991). Therefore, ESP's attempted service by mail of both EII in Indiana and EEC in Taiwan is insufficient.[2]

### 2. Service Pursuant to the Illinois Business Corporation Act

As with the attempted service by mail as discussed above, the August 28, 1991 service on the Secretary of State is effective only if authorized under state law. ESP argues that this method of service is proper because it complied with the require-

---

1. ESP explicitly concedes that the August 1, 1991 alternate service under Rule 4(i)(1)(D) was never effected. ESP Response at 11. Further, ESP advances no argument regarding either the initial attempt at service through Welch or the October 30, 1991 summons left with the clerk, effectively conceding the non-effectiveness of each method.

2. This court's conclusion regarding the inadequacy of the method of service on EII, an Indiana corporation neither an inhabitant of, nor found in, Illinois, obviates the need to determine if EII is in fact an agent authorized to accept service of process on behalf of EEC.

ments of § 5.30 of the Illinois Business Corporation Act, which provides:

> Service of process on foreign corporation not authorized to transact business in Illinois. If any foreign corporation transacts business in this State without having obtained a certificate of authority to transact business, it shall be deemed that such corporation has designated and appointed the Secretary of State as an agent of process upon whom any notice, process or demand may be served. Service on the Secretary of State shall be made in the manner set forth in subsection (c) of Section 5.25 of this Act.

Ill.Rev.Stat. ch. 32, ¶ 5.30 (Supp.1991). It is undisputed that ESP has complied with the technical service procedures set forth in § 5.25 of the Illinois Business Corporation Act. Thus, the issue this court faces is whether ESP's contacts with Illinois amount to "transacting business" within the meaning of § 5.30.

■ At the outset, we note that the test for "transaction of business" under § 5.30 is the same test as employed under the Illinois long-arm statute. *American Roofing Corp. v. Griffin Sales Co.*, No. 88–2252, slip op. at 3 (N.D.Ill. July 13, 1988) (1988 WL 76943, 1988 U.S.Dist. LEXIS 7624); *Business/Institutional Furniture, Inc. v. Siegas*, No. 86–7133, slip op. at 3 (N.D.Ill. Feb. 7, 1987) (1987 WL 6621, 1987 U.S.Dist. LEXIS 969). While there is no clear definition of what that term means, "[i]t is clear that 'transaction of business' can be a single act, as long as the cause of action arises from that act." *Business/Institutional*, slip op. at 3 (citing *Braband v. Beech Aircraft Corp.*, 51 Ill.App.3d 296, 9 Ill.Dec. 684, 686, 367 N.E.2d 118, 120 (1st Dist.1977), *aff'd*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979)).

■ As mentioned in our discussion regarding "minimum contacts," *see supra* Section III of this opinion, EEC initiated, negotiated and executed the contract in question in Illinois.[3] It is settled law that, "if a foreign defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, defendant is subject to suit under the Illinois long-arm statute." *Id.* (citing *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984); *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391 (N.D.Ill.1982); *First Nat'l Bank of Chicago v. Boelcskevy*, 126 Ill. App.3d 271, 81 Ill.Dec. 380, 466 N.E.2d 1182, 1185 (1st Dist.1984)). That EEC physically came to Illinois, initiated, negotiated, and executed the contract at the center of this dispute is overwhelming evidence that EEC "transacted business" in Illinois as that term is defined in § 5.30 of the Illinois Business Corporation Act. *See id.* ("We have no difficulty concluding, on the facts plaintiff presents, that [defendant] transacted business in Illinois. [Defendant] was physically present in Illinois when it negotiated and executed a contract with an Illinois Corporation. These activities constitute the transaction of business in Illinois."). Since EEC was not registered to transact business within the State of Illinois, service was properly made upon the Illinois Secretary of State. Accordingly, EEC's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5) for inadequate service of process is denied.

## V. ESP's MOTION TO ASSESS COSTS

■ Finally, we turn to ESP's motion to assess costs for service of process on defendant EEC. The crux of ESP's motion is that EEC received two summons and acknowledgments under Rule 4(c)(2)(C)(ii)—one directly and the other through its agent EII—and refused to return the acknowledgments as provided in that rule. As such, ESP claims it is entitled to the costs of personal service under Rule 4(c)(2)(D). However, as discussed *supra* subsection IV(1) of this opinion, any attempt to effect service on either EEC or EII by mail is insufficient. It is axiomatic

---

**3.** It is important to note that our previous conclusion that EEC's contacts with Illinois fulfilled the "minimum contacts" requirement of the Illinois long-arm statute entailed analysis separate and distinct from the instant consideration.

that costs may not be assessed under Rule 4(c)(2)(D) unless the defendant receives a copy of the summons and complaint pursuant to a proper method of service of process. Accordingly, ESP's motion is denied.

## VI. CONCLUSION

For the reasons as set forth above, we deny both EEC's motion to dismiss and ESP's motion to assess costs of personal service. It is so ordered.